Argued March 3, reversed and remanded July 9, 1970

GRIMSTAD ET AL, *Appellants, v.*
DORDAN ET AL, *Respondents.*

471 P2d 778

*Maynard Wilson*, Cottage Grove, argued the cause for appellants. On the briefs were Wilson & Paauwe.

*James W. Walton*, Corvallis, argued the cause for respondents. On the brief were Ringo, Walton & McClain.

Before PERRY,* Chief Justice, and McALLISTER, SLOAN, O'CONNELL, DENECKE, HOLMAN,** and TONGUE, Justices.

McALLISTER, J.

This is a suit in the nature of a quiet title proceeding, ORS 105.605, in which plaintiffs claim to be the owners of certain land and ask the court to determine the adverse claims of the defendants to that land and enjoin them from asserting those claims

---

* Perry, C. J., retired June 1, 1970.
** Holman, J., did not participate in this decision.

in the future. Plaintiffs' claim of title is based on adverse possession. The trial court held that plaintiffs had failed to prove their claim, and decreed defendants to be the owners of the property.

The property in dispute is part of a large tract once owned by Frank Johnson, bounded on the south by the Alsea River and extending north 812 feet. The Alsea Highway crossed the property from east to west about 340 feet north of the river.

The easterly portion of the Johnson tract was conveyed in 1933 to Larsons and in 1942 inherited by Larsons' daughter, a Mrs. Lake. The Lakes moved onto the Larson property in 1942 and, at the time of the trial, Mr. Lake was still living on that part of the Larson tract north of the highway. In 1962 the Lakes conveyed that portion of the Larson tract lying south of the Alsea Highway to Yaple, who, in turn, sold to Leekley, from whom the defendants Dordan purchased by contract in 1964.

The westerly portion of the Johnson tract was conveyed in 1938 to Evans. In 1956 Evans' daughter, Rosemary Nichol, and her husband purchased the west tract from her father's estate. In 1964 the Nichols conveyed the west tract to plaintiffs.

The property in dispute is a strip 27 feet wide and about 340 feet long between the Alsea Highway on the north and the Alsea River on the south. Plaintiffs claim title by adverse possession to the line of an old fence which stood for many years 27 feet east of the record boundary between plaintiffs' tract on the west and defendants' tract on the east.

There is no doubt that the fence was maintained between the east and west tracts, both north and south of the highway, from 1935 until 1961 when that portion

of the fence south of the highway was removed. Mr. Lake testified that in 1935 he visited his wife's parents, the Larsons, who then lived on the easterly tract. Lake testified that the fence was then two years old and pictures taken on that visit by Lake showing the fence in place were received in evidence.

Lake testified that when he visited the property in 1935 and again in 1936 the Johnsons, who owned the west tract, used the area up to the fence to pasture pigs and cattle. Lake moved onto the easterly tract in 1942. By that time the westerly tract had been conveyed to Evans and had been planted to bulb crops. The fence was still there and was treated as the boundary between the two properties, with Lake farming up to the fence on his side and Evans farming up to the fence on the other side. According to Lake that situation continued at all times after Evans acquired the west tract in 1938.

The evidence does not disclose who built the fence, but Lake testified that he maintained it for about 20 years until that portion of the fence south of the highway was removed in 1961.

Along the west side of the fence, from the highway to the river, there was an unsurfaced farm road or lane used by the owners of the land west of the fence for access to their fields south of the highway. A number of witnesses testified that the road had been there continuously and in the same location throughout the years. There was some variance in the testimony as to the distance between the road and the fence, but it appears that the road was as close to the fence as the movement of farm machinery and farming operations permitted. The land was cultivated to the edge of the road and the road provided a turning space for equipment working in the planted area.

Rosemary Nichol testified that her parents, the Evans, had farmed the tract west of the fence since the 1940's and since 1946, possibly earlier, had planted bulb crops right up to the road adjoining the fence. Both Mrs. Nichol and her husband testified that after they acquired the property they continued to use it for bulb crops and used the land, including the road, up to the fence.

The testimony contains no serious conflicts in the facts, and few discrepancies among the witnesses. The testimony of Lake and the Nichols as to the use of the land up to the fence by the occupants on both sides is fully corroborated by other disinterested witnesses and pictures, including aerial photographs. It is undisputed that the fence was standing for a period of twenty-five years or more, from at least 1935 to 1961. There is ample testimony of a continuous use of the land during this same period, and the evidence is especially clear as to the use after 1942. The natural inference from the evidence is that the owners of the westerly tract thought the fence was their boundary and occupied and used the premises upon that assumption.

■ To establish ownership of land by adverse possession, it must be shown that the possession was actual, open, notorious, hostile, continuous, and exclusive, under a claim of right or color of title, for a period of ten years. *Reeves et al v. Porta*, 173 Or 147, 149, 144 P2d 493 (1944); ORS 12.050. There seems to be in this case no serious claim that whatever use plaintiffs' predecessors made of the property was not open and notorious, or that it was not continuous for a period of at least ten years.

■■ In *Norgard et al v. Busher et ux*, 220 Or 297, 304, 349 P2d 490, 80 ALR2d 1161 (1960) it was held that

the element of adverseness or hostility is established when it is shown that the land was occupied under the mistaken belief on the part of the occupier that the land in question belonged to him. Plaintiffs contend that the facts in this case bring it within the rule of *Norgard*, while defendants claim that case does not control because there is evidence that Mrs. Nichol was aware that there was a question about the correct boundary line between the two properties. Mrs. Nichol did testify that she and her husband had discussed with Mr. Lake the possibility of having a survey made of the boundary between the two properties. She denied that the reason for this discussion was any uncertainty as to the proper location of the line. Mr. Nichol testified that he had no doubt about the correct line between the tracts, but that he was aware of a probable error in the legal description in his deed, which would, he said, have "put the line across the river."

The opinion in *Norgard* distinguished cases of "pure mistake" from those of "conscious doubt" as follows:

"Where an occupant of land is in doubt as to the location of the true line it is reasonable to inquire as to his state of mind in occupying the land in dispute. If, having such doubt, it was his purpose to hold the disputed area only if that area was included in the land described in his deed, then it is reasonable to say that the requisite hostility is lacking. But, if the occupation of the strip is under a mistaken belief that it is included in the description in his deed (a state of mind sometimes described as 'pure mistake' to distinguish it from the cases of 'conscious doubt'), then his possession is adverse. * * * 220 Or at 301.

If the testimony of Mr. and Mrs. Nichol discloses a

"conscious doubt," it also discloses an intent to occupy the land regardless of the deed description, which was thought to be in error. All of the circumstantial evidence in the case indicates an intention on the part of Nichols and the other owners of the westerly tract to occupy up to the fence. There is nothing to indicate an intention to occupy the land described by the deeds only, should there be any discrepancy.

The above discussion has assumed that the state of mind of Mr. and Mrs. Nichol is relevant. However, we think there is ample evidence of adverse possession prior to the Nichols' acquisition of the westerly tract in 1956. Continuous use of the property dating from 1940 or 1941, when bulb farming began under Evans' ownership, is amply evidenced by the testimony of Mr. Lake, Mrs. Nichol, and other witnesses familiar with the property. We think that the statute had run by 1956 if not before; but if not, then Nichols' possession was sufficiently adverse to continue the running of the statute during their occupation of the property.

■ Defendants maintain that possession of the strip was not exclusive, because there was testimony that the people of the area sometimes used the farm road to go to the river for picnics. This was during the Nichols' ownership, and cannot affect their title if the statute had run, as we think it had, prior to 1956. Moreover, Mr. Nichol testified that most of these people used the road with his permission. An occasional trespass is not inconsistent with Nichols' claim of ownership. The possession need not be absolutely exclusive, if it is of the kind to be expected of an owner under the circumstances. *Norgard v. Busher, supra,* 220 Or at 308.

■ Defendants also argue that the area occupied was not sufficiently defined or identified. This argument

is without substance. The location of the road within a few feet of the fence, and the cultivation of the land up to the edge of the road, clearly amount to an occupation of the land up to the fence—the obvious physical separation between the properties.

■ The clear weight of the evidence tends to show that plaintiffs' predecessors occupied the disputed strip as their own, at least after 1941; that their possession was open and hostile and of a kind consistent with a claim of ownership; and that the statutory period had run long prior to the dispute which precipitated this suit. The trial court was in error in holding that plaintiffs had failed to prove their claim.

Reversed and remanded for entry of a decree in accordance with the foregoing.