Argued November 4, affirmed December 16, 1976

# ALMOND, *Respondent,*
## *v.*
# ANDEREGG, *Appellant.*
## (Trial Court No. 414-292, Case No. 24504)
557 P2d 220

*Donald C. Walker,* Portland, argued the cause for appellant. With him on the brief was Phillip R. Muir, Portland.

*Robert L. Fulkerson,* Portland, argued the cause for respondent. On the brief was F. R. Cornilles, Portland.

Before Denecke, Chief Justice, and Holman, Tongue, Lent and Bohannon, Justices.

LENT, J. (Pro Tempore).

**LENT, J.** (Pro Tempore).

This is a suit in equity to quiet title to certain real property. Plaintiff's claim is based upon adverse possession. Defendant is the record title holder. Defendant concedes that plaintiff has established a prescriptive use of a portion of the parcel in question denominated as a "roadway" sufficient to gain an easement but denies that plaintiff has established such adverse possession of any of the parcel as to acquire fee title thereto. The trial court found that the plaintiff had gained fee title to the entire parcel and decreed that plaintiff "be and hereby is decreed to be the owner in fee" of the parcel, which was described by metes and bounds. Defendant appeals.

We try this suit anew on the record. ORS 19.125(3). The evidence consisted of oral testimony of witnesses called by both parties, a map and some photos. The conflicts in testimony were not so great as to make it appear that the trial judge was greatly concerned with an assessment of the credibility of the witnesses and of the reliability of their testimony. Nevertheless, we should and do give considerable weight to the findings of the trial judge.

S. W. Walters Road is a public highway running in a generally northerly-southerly direction in Multnomah County near the city of Gresham. Both plaintiff and defendant are the record owners of parcels of real property abutting the road on the east. Plaintiff's property abuts defendant's property, both on the north and continuing around to abut defendant's property on the east. Plaintiff's house is east of defendant's property, and the northernmost part of the house is approximately 25 feet south of the north line of defendant's property if that line were to be extended easterly to a point north of plaintiff's house.

Defendant and her husband acquired their property in 1942, and plaintiff and her husband acquired their property in 1944. Both husbands were dead by the time of this case.

In 1944 shortly after plaintiff and her husband acquired their property they constructed a roadway approximately 10 feet in width from Walters Road to the vicinity of their house. They believed that they were constructing the roadway along the southern part of that portion of their property which abutted the defendant's property on the north. Actually the roadway departed from the east edge of Walters Road in such a position that the southerly edge of the roadway was 2.24 feet south of the parties' common property line, and the northerly edge of the roadway was north of that line. The roadway commenced running in an easterly by southerly direction for 10.52 feet, curved gradually to the north a little and then proceeded almost due east, crossing the east line of defendant's property at a point where the southerly edge of the roadway was 25 feet south of the northeast corner of defendant's property. Defendant's property line from the northwest to the northeast corner is 200 feet.

The parcel which plaintiff claims by adverse possession contains 3,615 square feet. It is bounded on the west by the east edge of Walters Road, on the south by the south edge of the roadway, on the east by the east line of defendant's property and on the north by defendant's north property line. Between the roadway and defendant's north property line is a triangularly shaped parcel to which defendant contends plaintiff has acquired no rights by adverse use. Because of a desire to subdivide portions of the property, a survey was made in 1972 which showed that the parcel here claimed was on property of which defendant was the record owner. Plaintiff commenced this suit March 26, 1975.

■ Defendant contends that since plaintiff has used the roadway portion of the disputed land only for ingress and egress, nothing more than an easement can be acquired. Defendant concedes that all elements necessary to establish a prescriptive easement have been met and that plaintiff is entitled to a declaration that an easement of the roadway over defendant's

property exists in favor of plaintiff's property. From this premise defendant argues that plaintiff's claim to the roadway and to the strip north of the roadway lying south of defendant's north deed line must be separately analyzed. We do not agree.

Plaintiff has never claimed a mere right to cross over a certain portion (the roadway) of property admittedly owned by another (the defendant). Plaintiff's claim has always been grounded upon the fact that plaintiff's husband constructed the roadway upon land he and plaintiff believed to be their own and that the use of all the property north of the southern edge of the roadway was because they actually owned the property. Plaintiff exercised ownership dominion over the land itself, not just a right to pass over the surface of the land.

■ Both parties agree that plaintiff claims by right rather than by title, and both concede the applicability of *Grant v. Oregon Navigation Co.,* 49 Or 324, 90 P 178, 90 P 1099 (1907): Plaintiff can gain title only to that land actually used or occupied by her for the necessary 10-year statutory period. To establish her claim, plaintiff, therefore, must show actual use or occupancy, which has been open and notorious, hostile, exclusive and continuous for a 10-year period.

Defendant concedes that this is a case of "pure mistake" as to the location of the deed boundary and, consequently, hostile intent is presumed. *Norgard et al v. Busher et ux,* 220 Or 297, 349 P2d 490, 80 ALR2d 1161 (1960). We must review the evidence to determine if plaintiff has established the other elements.

■ There is evidence that plaintiff, her husband and their friends and sometimes employes used the roadway from 1944 to the time of trial not only for passage between the public road and plaintiff's house and outbuildings but also to turn farming equipment while farming the property north of the roadway. The roadway was always maintained and gravelled by plaintiff, never by defendant. There is no evidence

[ 1045 ]

which seriously contradicts any of this. Defendant did produce evidence that some use of the roadway was made by defendant and others in connection with the use of defendant's property. This was casual, and although there is no evidence that plaintiff objected to such use, there is evidence that plaintiff was not aware of the amount of use of this kind which defendant claims was made.

There is evidence produced by plaintiff from which the trier of fact might find that shortly after the construction of the roadway plaintiff and her husband for about two years planted corn and potatoes on the land immediately north of the roadway. Following that, they planted the land to strawberries and raspberries. One witness worked with plaintiff's husband on the berries in 1952 and 1953 and again in 1955 and 1956. Another cultivated the berries in the early 1950's. One of defendant's witnesses testified that the berries were in for about three or four years but disputed that they came any closer to the roadway than 20 or 30 feet. After the berries were taken out another of plaintiff's witnesses testified that a hay crop was planted and harvested. It is not clear that the parcel was ever again planted to hay, but it was fertilized and a crop of hay or grass regularly taken from it up to the time of survey. One of defendant's witnesses, a farmer, described it as "a wild crop is what we call it." This witness said the wild crop came up to the roadway. The strip of land was certainly used for turning cultivators during the time either the strip or plaintiff's land to the north, or both, were being farmed. Another of plaintiff's witnesses testified a part of the strip was used for access to plaintiff's outbuildings.

Defendant's witness also testified:
    "Q  Was there a time of any consistent period of time that there was a hay crop not growing in that area?
    "A  No."

The same witness testified that the strip north of the

roadway was used by plaintiff's tractor in working the berries. Another of defendant's witnesses, a neighbor and school administrator by occupation, testified that since he had lived in the area from 1960 the hay crop had not been "cultivated" but that it had been cut as natural grass gone to hay. This natural grass hay crop (although containing thistles and weeds) is one for which plaintiff's witness paid her cash, excluding the year 1972. He said that prior to 1972 he took "several loads" off each year.

Essentially defendant's contentions before the trial court and here boil down to asserting that the evidence above-reviewed fails to establish the necessary exclusive occupancy and use required of one claiming under right rather than color of title and that it fails to establish a continued use for the statutory period. We find to the contrary.

Under our decisions plaintiff must show that she occupied or used the land as would the ordinary owner of the same type of land, taking into account the uses for which the land was suitable. *Norgard et al v. Busher et ux, supra.* Defendant here used property of the same kind just south of the roadway only to plant a few andromeda bushes for a total period of above five years. This is some evidence of how the ordinary owner of like land used it. *Norgard et al v. Busher et ux, supra,* also instructs us that the occasional allowing of defendant and others to use the roadway does not destroy the element of exclusive possession. Neither does the fact that the land was not cultivated or hay harvested except in proper season interrupt the continuity. *Springer v. Durrette et ux,* 217 Or 196, 342 P2d 132 (1959).

The roadway in this case plays much the same kind of role and has the same kind of significance as did the fence and like buffers in *Overton v. Blake,* 274 Or 91, 544 P2d 1037 (1976); *Grimstad v. Dordan,* 256 Or 135, 471 P2d 778 (1970); *Norgard et al v. Busher et ux, supra; Robinson v. Leverenz,* 185 Or 262, 202 P2d 517

(1949); *Myers v. Hatler et al,* 121 Or 332, 254 P 355 (1927).

That plaintiff and her husband used the property in the same manner as one might expect a landowner in like circumstances to do certainly appears from the impression their use created upon the defendant herself. From her cross-examination we learn:

> "Q  Now, Mrs. Anderegg, was there ever any question in your mind before the survey was done—was there any question in your mind that the roadway and property north of it belonged to Mrs. Almond?
>
> "A  Never.
>
> "Q  You never had any reason to question it?
>
> "A  No."

For 28 years the parties did not question the ownership of this real property as being in plaintiff and her husband. *See* particularly *Robinson v. Leverenz, supra,* and cases there reviewed, as well as *Norgard et al v. Busher et ux, supra,* and cases and lines of authority there discussed.

Defendant's assignments of error were as follows:

### "ASSIGNMENT OF ERROR NO. 1

"Plaintiff claims property from the record title owner by adverse possession under claim of right. Actual possession of the whole parcel was thus required. Mere use of the road was not sufficient to claim possession of the whole tract. The road and the parcel north of the road should have been examined separately to see if the requirements of adverse possession had been met."

### "ASSIGNMENT OF ERROR NO. 2

"All elements of adverse possession must be proven by clear and convincing evidence. The evidence regarding the actual possession and continuity of use of the parcel of land north of the road is vague and uncertain. Plaintiff has not carried the burden of proof."

### "ASSIGNMENT OF ERROR NO. 3

"Defendant concedes that plaintiff has a right of way by prescription in the road. The doctrine of adverse possession does not apply to the roadway. Use determines the interest that a claimant has in the fee and

plaintiff's use has given plaintiff a right of ingress and egress to the public highway."

Although we have not discussed these assignments consecutively and separately because of the perhaps unavoidable overlapping of questions involved, we believe we have responded to each assignment. Our trial of the case anew, ORS 19.125(3), upon a careful examination of all of the record convinces us under the authorities cited that the plaintiff must prevail.

Affirmed.