Argued August 29, affirmed December 26, 1978

# WOOLFOLK et ux, *Appellants,*
## *v.*
# ISLER et al, *Respondents.*
## (No. 76-11-319, CA 10155)

588 P2d 632

Jack Stuart Bernstein, West Linn, argued the cause and filed the brief for appellant.

Raymond R. Bagley, Jr., Oregon City, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Gillette and Roberts, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

In this quiet-title proceeding, plaintiffs claim title by adverse possession to a strip of land that is about 55 feet wide at the widest point, about 6 feet wide at the narrowest point, and totals about 1.7 acres. This disputed strip has been enclosed with plaintiffs' property by a fence since at least 1948. The trial court upheld defendant's record title. Plaintiffs appeal.

■ Adverse possession consists of the actual, open, notorious, exclusive, continuous and hostile possession under claim of right or color of title. *Terry v. Timmons,* 282 Or 363, 365, 578 P2d 405 (1978); *Beaver v. Davis,* 275 Or 209, 211, 550 P2d 428 (1976). These elements must be established for "10 years before the commencement of the action." ORS 12.050. This proceeding was initiated in November, 1976. So the relevant inquiry is whether plaintiffs and their predecessor possessed adversely *from at least November, 1966.* We find insufficient evidence of adverse possession during the early part of the statutory period, and therefore affirm.

The fence to which plaintiffs claim has been the one constant throughout the statutory period. It is a substantial, well-maintained fence consisting of cedar posts with woven wire on the bottom and two or three strands of barbed wire on the top for most of its distance. The following diagram is illustrative:

Defendant's
Parcel

Plaintiffs'
Parcel

homesite

fence

driveway

survey
line

County Road

We can best describe the other relevant evidence, and explain our conclusion, by separately discussing three different periods of time: 1968-76; 1967-68; and pre-1967.

A. 1968-76.

In 1968, plaintiffs began constructing a driveway leading from the county road on the south to their homesite in the center of the parcel. Since they thought the western fence to which they now claim was the boundary, plaintiffs built about 1300 feet of the driveway immediately adjacent to the fence in the disputed strip. Indeed, defendant's predecessor, Dutton, actively assisted plaintiffs in constructing their driveway. Since 1968, plaintiffs have continuously controlled and used the driveway for the movement of

vehicles, people and livestock. We conclude that plaintiffs adversely possessed the disputed strip after they began driveway construction in 1968. *See Almond v. Anderegg,* 276 Or 1041, 557 P2d 220 (1976).

B. 1967-68.

Plaintiffs purchased the property to which they have record title in August, 1967. It was fenced on all sides and plaintiffs understood they were purchasing what was enclosed. The real estate agents who showed plaintiffs the property, as well as their neighbors, shared the belief that the fences were on the boundaries. Between when they purchased the property in 1967 and when they began driveway construction in 1968, plaintiffs permitted a couple who lived nearby, the Shirleys, to pasture five horses on the property. Annotation, 48 ALR3d 818 (1973), cites *Seavey v. Williams,* 97 Or 310, 191 P 779 (1920), and *Ambrose v. Huntington,* 34 Or 484, 56 P 513 (1899), for the proposition that a substantial enclosure of property plus the pasturing of livestock on it can be sufficient to establish the elements of adverse possession. Additional cases that seem to support that proposition include: *Nevin v. Smith,* 283 Or 347, 584 P2d 251 (1978); *Overton v. Blake,* 274 Or 91, 544 P2d 1037 (1976); *Grimstad v. Dordan,* 256 Or 135, 471 P2d 788 (1970); *Gudelj v. Sundberg,* 252 Or 493, 450 P2d 756 (1969); *Norgard et al v. Busher et ux,* 220 Or 297, 349 P2d 490, 80 ALR2d 1161 (1960); *Myers v. Hatler et al,* 121 Or 332, 254 P 355 (1927).

There is, however, no direct evidence that the Shirleys' horses literally grazed on the disputed 1.7 acres. Nothing in the above-cited cases suggests that direct evidence to that effect is essential. But *Miller v. Bushnell,* 275 Or 45, 549 P2d 655 (1976), may make such direct evidence essential. The plaintiff there claimed title by adverse possession to an 18-acre tract enclosed by a fence along with 300 acres to which he had record title. Plaintiff contended that his livestock had been pastured on the entire parcel. In holding that

plaintiff had not acquired title by adverse possession, the Supreme Court stated:

> "Plaintiffs did not introduce direct and specific evidence that cattle and horses continuously grazed the 18 acres during the season. Their evidence was that if an 18-acre tract is enclosed within a 300-acre tract, stock are naturally going to graze the 18 acres. This may or may not be true depending upon topography, water, brush, etc., on which there was little evidence * * *." 275 Or at 48-9.

As applied to this case, *Miller v. Bushnell, supra,* may mean that we are powerless to infer that the Shirleys' horses would have necessarily grazed on the disputed 1.7 acres while within the substantial fence that enclosed the disputed strip along with plaintiffs' land. Or the *Miller* language may only mean that the Supreme Court, on de novo review, declined to draw such a factual inference on the facts of that case. But we need not resolve which interpretation to place on *Miller,* for even if we could and did infer adverse possession during the 1967-68 period, plaintiffs' proof fails as to the earlier part of the statutory 10-year limit, to which we now turn.

C. Pre-1967.

Plaintiffs purchased from the Johnsons, who had owned the property since 1958. The Johnsons were absentee owners who resided in Portland. They did not testify. One person who had previously lived in the area and another who was a former lessee of the Johnsons testified about pre-1967 uses. This testimony establishes: (1) between 1955 and 1957 livestock were pastured on the property; (2) between 1957 and 1961 none of the witnesses was aware of any use or occupation by anyone; (3) between 1961 and 1963 livestock were pastured on the property; and (4) between 1963 and 1967, when Johnsons sold to plaintiffs, none of the witnesses was aware of any use or occupation by anyone.

██ There was privity between plaintiffs and the Johnsons for purposes of tacking possessions. *West v.*

*Edwards,* 41 Or 609, 614, 69 P 992 (1902). But even after tacking, there must be 10 consecutive years of adverse possession of the disputed strip, *i.e.,* from November, 1966, to November, 1976. We find no evidence of adverse possession during the late 1966/early 1967 period.

■ Although plaintiffs do not point-blank so argue, it may be that they are relying on the earlier acts of pasturing livestock during 1955-57 and 1961-63 to support the inference that there was some similar use of the disputed strip during late 1966 and early 1967. But the cases uniformly state that a person claiming title by adverse possession faces a "heavy burden," *Whitley v. Jacobs,* 278 Or 541, 547, 564 P2d 1057 (1977), and "will be held to strict proof," *Reeves et al v. Porta,* 173 Or 147, 156, 144 P2d 493 (1944). *See also Fry et al v. Woodward et ux,* 221 Or 39, 43, 350 P2d 183 (1960); *Lemon v. Madden,* 216 Or 539, 544, 340 P2d 977 (1959); *Du Val et ux v. Miller,* 208 Or 176, 179, 300 P2d 416 (1956). Even assuming that legally we may draw an inference of adverse use during late 1966 and early 1967, *see* discussion of *Miller v. Bushnell, supra,* factually such an inference is not here warranted.

■ The only remaining issue concerns the effect of the fence to which plaintiffs claim, which has been in place and maintained for longer than the 10-year period. Is this enough, standing alone, to establish adverse possession? *Heyting v. Bottaglia et al,* 123 Or 517, 520, 262 P 850 (1928), states:

> "The testimony shows that the inclosure of plaintiff's property was a substantial rail fence. As a matter of law, it has been held that an actual, visible and substantial inclosure is decisive proof of disseizen: Buswell, Limitations and Adverse Possession, § 242."

However, we find it impossible to regard this as an accurate statement of present Oregon law. *Norgard v. Busher, supra,* discusses at length the effect to be given to a fence in this kind of case without any

suggestion it can be conclusive evidence of adverse possession. Citing *Norgard,* and *Brooke et ux v. Amuchastegui et ux,* 226 Or 335, 342, 360 P2d 275 (1961), refers to "the probative character of the fence as one determinant of plaintiffs' adverse possession." Most significantly, *Miller v. Bushnell, supra,* rejected a claim of adverse possession despite enclosure of the contested area by a substantial fence for more than the statutory period. We conclude here that the fact the fence was in place during late 1966 and early 1967, absent any other evidence of adverse possession and use, is of itself insufficient.

Affirmed.