Argued and submitted August 18, affirmed October 13,
reconsideration denied November 20,
petition for review denied December 9, 1980 (290 Or 211)

## MONTGOMERY, et al,
*Respondents,*

*v.*

## SELLERS, et al,
*Appellants.*

### (No. 78-6900, CA 16164)

618 P2d 5

Stuart M. Brown, Eugene, argued the cause for appellants. With him on the briefs was Young, Horn, Cass & Scott, Eugene.

Herb Lombard, Eugene, argued the cause for respondents. With him on the brief were Lombard, Gardner, Honsowetz & Brewer, and David Brewer, Eugene.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

## BUTTLER, J.

██ Defendants appeal from the decree of the trial court determining that plaintiffs had established title to a disputed strip of land by adverse possession, and by practical location.[1] We affirm.

The parties own adjoining property in Lane County. Both parcels had originally been owned by the Livingstons. Plaintiffs' parcel had been sold to a son, John Livinston, in 1952. He then sold to the Lloyds, from whom plaintiffs purchased. When they bought their property in 1966 plaintiffs were informed that there was a problem with the deed description of the western boundary because the description did not close.[2] There was, however, an old fence line which connected the northern and southern boundaries of the property. Plaintiffs were told by the sellers' real estate agent that the fence line would probably be considered the western boundary line, and they so considered it.

The land in question is largely undeveloped rural land with timber and brush cover. Plaintiffs lived on their property for most of the time between 1966 and 1977 when this suit was brought. They rode horses and motorcycles over the entire property. They testified that they cleared and trimmed all around the property.

There were fences around most of the parcel's boundaries when plaintiffs bought, although much of

---

[1] Plaintiffs alleged that the fence line was the boundary between the two parcels under the doctrine of practical location. This doctrine is closely akin to the doctrine of boundary by acquiescence. It is " 'based principally upon agreement, express or implied, of adjoining land owners, whereby for many years they recognize or acquiesce in a certain line as their true boundary.' " *Drury et ux v. Pekar et al,* 224 Or 37, 43, 355 P2d 598 (1960). The application of the doctrine also requires an indefinite or uncertain boundary line between the adjoining land owners. *Drury et ux v. Pekar et al, supra,* 224 Or at 43. The record in this case is not sufficient to permit us to decide whether plaintiffs have established the boundary by practical location, although what record there is on the question strongly suggests that the fence line had been acquiesced in for the statutory period.

[2] It appears from the deed description that the problem arises from a patent error involving a reverse call. Neither plaintiffs nor defendants, each for their own reasons, have sought reformation of the deed.

the fence was in disrepair. In 1967 the fence along the line in dispute was replaced by the then owner of defendants' property, with some help from plaintiffs. The testimony indicated that the fence was put up so that cattle could be run on the property and also because sale of the land was being contemplated at the time. The 1967 fence basically followed the old fence line. Plaintiffs made occasional repairs to that fence over the years and testified they considered that fence to be their western boundary.

Defendants bought their property in 1971 from a relative, who had purchased it from a daughter of the Livingstons. The eastern boundary of defendants' property is described in their deed, and in the preceeding deeds in their chain of title, only as the western boundary of what is now plaintiffs' property.

Shortly after defendants purchased the property, they discovered, they said, that they did not have as much acreage as they had been told they were getting. They commissioned a survey of their eastern boundary, the boundary in dispute here. The surveyor was unable to locate that line from the deed descriptions, but was able to locate both the northwest and southwest corners of plaintiffs' property. At defendants' request he laid out and described a straight north-south line between those two corners. That line is 27.25 feet east of the fence line at the northern boundary and 4.1 feet east of the fence line at the southern boundary. The area between the surveyed line and the fence line is about .62 acres. Defendants decided that the straight north-south line was the correct boundary between the parcels.

Having so decided, defendants shortly thereafter removed about 800 feet of the approximately 1750 feet of fence, beginning at the southern boundary, and extended an existing gravel road so that it lead to the site they had chosen for their home. According to a survey map prepared in 1977, the extended road lies entirely to the west of the fence line,

although at some points it is very close to that line. There was testimony that the ditch from the road extended beyond the fence line in places, but that fact does not appear on the survey map in evidence.

When they discovered that defendants had torn down part of the fence, plaintiffs contacted an attorney who wrote a letter to defendants demanding that they cease trespassing on plaintiffs' property. There was no further contact between the parties until 1977 when defendants contracted to have timber cut on their property. They instructed the loggers that their eastern boundary was the surveyed line to the east of the fence line, and trees were cut over to that line. Plaintiffs' protested defendants' actions and eventually brought this suit.

■ In order to establish title by adverse possession plaintiffs must show by clear and convincing evidence that their possession was "actual, open, notorious, hostile, continuous, and exclusive, under a claim of right or color of title, for a period of ten years." *Grimstad v. Dordan,* 256 Or 135, 139, 471 P2d 778 (1970); *and see Lee v. Hansen,* 282 Or 371, 375, 578 P2d 784 (1978); *Beaver v. Davis,* 275 Or 209, 211, 550 P2d 428 (1976); ORS 12.050.

There is no evidence in the record of the use made of the land by plaintiffs' predecessors; therefore, we look only at the period beginning with plaintiffs' purchase of the property in 1966.

Plaintiffs testified they intended to possess the land up to the fence. They acted in accord with that expressed intention in response to defendants' actions in taking down a portion of the fence and building the road. Their possession was hostile and under claim of right. *See Terry v. Timmons,* 282 Or 363, 578 P2d 405 (1978).

■■ Plaintiffs' burden is to show that they possessed the land as would the ordinary owner of the same type of land, taking into account the uses for which the land is suitable. *Lee v. Hansen, supra; Almond v. Anderegg,* 276 Or 1041, 557 P2d 220 (1976);

*Norgard et al v. Busher et ux,* 220 Or 297, 349 P2d 490 (1960). Although plaintiffs did not do much with the disputed strip of property, they used it in the same way they used the rest of their land: they used it for recreation, they did some trimming and clearing and they occasionally repaired the fence. These are the types of uses to which an owner would put such land.

There is no evidence that anyone else used the land. Although defendants removed a portion of the fence when they extended the gravel road onto their property, the evidence, although not undisputed, indicates that the road was entirely to the west of the fence line. When no actual encroachments were made, plaintiffs dropped the matter after warning defendants not to trespass.

We conclude, as did the trial court, that plaintiffs have established title to the land east of the fence line by adverse possession.

Affirmed.