EVANS et ux,
*Respondents,*

*v.*

HOGUE et al,
*Appellants,*

HOGUE et ux,
*Third-Party Plaintiffs,*

*v.*

WALL,
*Third-Party Defendant.*

(41-025; CA A22210)

663 P2d 34

Donald J. Morgan, Portland, argued the cause for appellant Jeannette K. Mundt. With him on the briefs were Wood, Tatum, Mosser, Brooke & Holden, Portland. Keith R. Swensen, Portland, joined in the brief and in Donald J. Morgan's oral argument on behalf of appellants Harry E. Hogue and Betty J. Hogue.

Andrew M. Rich, Hillsboro, argued the cause for respondents. With him on the brief was Huffman and Zenger, P.C., Hillsboro.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Van Hoomissen, Judge.

JOSEPH, C. J.

Van Hoomissen, J., dissenting.

**JOSEPH, C. J.**

This appeal arises out of an action to quiet title. The disputed land, consisting of approximately two and one-half acres, is located as shown in the diagram. The trial

court found that plaintiffs and their predecessors had adversely possessed the land for the requisite period and therefore awarded plaintiffs title. Defendants appeal, and we affirm.

Thomas and Clarissa Hall were the first owners in the chain of title to the land for which plaintiffs have a record title. In 1905, a survey established the boundary between plaintiffs' and defendants' land on the line shown on the diagram as the west fence. The fence was constructed by the Halls about that time, apparently in reliance on the survey.

The Halls utilized the disputed area mainly to pasture cattle, and those cattle made a well-worn trail closely along the fence. In 1935, the Halls conveyed their record title to W. N. Hall; however, the deed did not contain a description of the disputed tract, nor did any subsequent deed by grantors of the plaintiffs' tract. Deeds to defendants' land always included the disputed strip in their descriptions. In 1948 the Hall property was conveyed to the Sampsons,[1] who in 1970 conveyed it to the Luckeys. The Luckeys conveyed it to plaintiffs in separate transactions in 1974 and 1975.

The primary dispute on appeal as presented by the parties revolves around the issue of tacking and the question whether plaintiffs can tack their period of possession to that of their predecessors (including the Sampsons) to make up the ten-year statutory period required to perfect title by adverse possession. The parties agree, however, that during the tenure of the Sampsons from 1948 to 1970 all the requirements for adverse possession were met. Once the Sampsons had held adversely for the requisite period, legal title vested in them by operation of law, even though they took no formal action to obtain a record title. *See Spath v. Saks,* 70 Or 269, 273, 141 P 160 (1914). Therefore, when they conveyed to the Luckeys in 1970, the Sampsons then owned the disputed tract.

The right of *possession* of land may be passed orally from one adverse possessor to a successor; but once legal title is established, it can be transferred only by operation of law or by a deed. ORS 93.020. Although the Sampsons did not convey their title to the disputed strip by their 1970 deed and retained legal title to the strip, that benefits defendants not at all, for they and their predecessors in interest had long been deprived of title.

The only possible basis on which to sustain the claim of these defendants is on the effect of the Sampsons' *1981* quitclaim deed to Mary Baker Wall, who had conveyed her record title to the defendants' tract to the

---

[1] There were numerous transfers of the land between 1933 and 1948 not pertinent to this appeal.

defendants by warranty deeds in 1972 and 1977.[2] The Sampsons conveyed to the Luckeys on September 15, 1970; the Luckeys conveyed to the plaintiffs in 1974 and 1975. This action was begun on May 22, 1980, not quite four months before the end of the 10-year period after the Sampsons' conveyance. If the question were only whether plaintiffs' claim had matured against the Sampsons at that time, there might be a difficult (or at least interesting) question; but, by the time the Sampsons conveyed to Mary Baker Wall *in 1981,* the Luckeys and plaintiffs had been in adverse possession *against the Sampsons* (as well as Mary Baker Wall) for more than 10 years. Therefore, although the Sampsons' quitclaim deed did convey all of their right, title and interest in the disputed area, that interest was nothing.

■  It is perfectly clear that defendants and their predecessors in title had lost any claim to the strip by 1948 at the latest, and plaintiffs were entitled to show that in defending their *possession* against defendants. They would not have had to show a *title* in themselves for that purpose. It was sufficient to show merely that defendants had no right to possession.[3]

■  If plaintiffs proved a title by adverse possession in the Sampsons (as they certainly did), that was enough to

---

[2] Defendants Hogue brought a third party action against Wall on her warranties. Her theory is that by taking a quitclaim deed from the Sampsons she made good on her warranties by an after-acquired title passing to the defendants. ORS 93.855.

[3] Defendants' reliance on *Du Val v. Miller,* 208 Or 176, 181, 300 P2d 416 (1956), is understandable but misplaced. That much-cited opinion, written in the Grand Style that afflicted and still afflicts so much of what passes for legal scholarship, is a horrendous exercise in obfuscation. Suffice it to say that the reason it has no application to this case is that the plaintiffs there, claimants to a title by adverse possession as plaintiffs here are, had been ousted of their possession by a defendant who in turn claimed a title by adverse possession; but the defendant also had a record title, as defendants here have. What the case is really about is that the plaintiffs were maintaining an *ejectment* action on the basis of their having succeeded by a quitclaim deed to an undivided three-quarters interest in the disputed tract from the heirs-at-law of one Duncan, who had acquired a title by adverse possession against Miller and her predecessors in title. In an earlier quiet title action, it had been established that the plaintiffs had no title by adverse possession. *Du Val v. Miller,* 183 Or 287, 192 P2d 249, 192 P2d 992 (1948). All the two opinions establish is that *Miller* had no claim to possession against the Du Vals, who had got the right to possess from some of the Duncan heirs, who had a title by adverse possession. The relevance of *Du Val* to this case is that plaintiffs here can defeat defendants merely on the strength of their predecessors' title by adverse possession.

defeat these defendants. Furthermore, when defendants relied on an after-acquired title from Mary Baker Wall, plaintiffs were entitled to show that their title was good as against the Sampsons by 1981 and that the Sampsons' quitclaim conveyed nothing. They did that, too. Unfortunately, the trial court's judgment does not clear plaintiffs' title as against the Sampsons, because they were not parties, a point ignored by the dissent. Nonetheless, these defendants have no claim of title or right.

Affirmed.

**VAN HOOMISSEN, J.,** dissenting.

The majority relies on the erroneous assumption that plaintiffs and their immediate predecessors, the Luckeys, held the disputed land adversely for a sufficient length of time to defeat the claim of the Sampsons, through whom defendants derive their title. For plaintiffs to quiet their title through adverse possession, every element of adverse possession must have been established for ten years before the commencement of this action. *Woolfolk v. Isler,* 37 Or App 687, 588 P2d 632 (1978); ORS 12.050.[1] No authority exists for excusing this requirement, as does the majority, when a party possesses adversely against an owner who is not a party to the quiet title action. Because plaintiffs initiated this action four months *before* the ten-year statutory period for adverse possession had run, they did not prove title through adverse possession. Therefore, plaintiffs cannot defeat the record title of defendants.

In May, 1981, the Sampsons quitclaimed their interest in the disputed land to Mary Baker Wall, defendant's predecessor in interest. Wall transferred record title in the disputed land to defendants by warranty deed in 1972. Such a deed conveys the grantor's entire interest in the described property at the date of the deed and any

---

[1] ORS 12.050 provides:

"An action for the recovery of real property, or for the recovery of the possession thereof, shall be commenced within 10 years. No action shall be maintained for such recovery unless it appear that the plaintiff, his ancestor, predecessor, or grantor was seized or possessed of the premises in question within 10 years before the commencement of the action."

after-required title. ORS 93.855.[2] Accordingly, both the record title and the legal title to the disputed land is in defendants. The trial court's conclusion that plaintiffs have perfected their claim of adverse possession was erroneous.

I respectfully dissent.

---

[2] ORS 93.855 provides:

"(1) Special warranty deeds may be in the following form:

---

_____, Grantor, conveys and specially warrants to _____, Grantee, the following described real property free of encumbrances created or suffered by the grantor except as specifically set forth herein: (Describe the property conveyed.)

(If there are to be exceptions to the covenants described in this section, here insert such exceptions.)

The true consideration for this conveyance is $_____. (Here comply with the requirements of ORS 93.030.)

Dated this _____ day of _____, 19__.

---

"(2) A deed in the form of subsection (1) of this section shall have the same effect as a warranty deed as described in ORS 93.850, except that the covenant of freedom from encumbrances shall be limited to those encumbrances created or suffered by the grantor and the covenant of warranty shall be limited to read: That the grantor warrants and will defend the title to the property against all persons who may lawfully claim the same by, through or under the grantor.

"(3) If the grantor desires to exclude any encumbrances or other interests from the scope of his covenants, such exclusions must be expressly set forth on the deed."