Argued and submitted February 21, affirmed June 14, 2006

Mark L. LIEBERFREUND
and Virginia Lieberfreund,
*Plaintiffs,*
*and*

Ron KAY,
*Respondent,*

*v.*

Raymond O. GREGORY
and Lorraine S. Gregory,
Trustees or Successors in Trust
Under Trust Agreement Dated March 20, 2002,
Known as the Gregory 2002 Trust,
*Appellants.*

02-2472-E2; A127822

136 P3d 1207

Duane Wm. Schultz argued the cause and filed the briefs for appellants.

Joseph E. Kellerman argued the cause for respondent. With him on the brief was Hornecker, Cowling, Hassen & Heysell, LLP

Before Armstrong, Presiding Judge, and Brewer, Chief Judge, and Rosenblum, Judge.

ROSENBLUM, J.

**ROSENBLUM, J.**

Defendants appeal a judgment awarding plaintiff title to a strip of land that plaintiff claimed to have acquired by adverse possession. Defendants argue that plaintiff failed to establish the elements of adverse possession by clear and convincing evidence. On *de novo* review, *Clark v. Ranchero Acres Water Co.*, 198 Or App 73, 75, 108 P3d 31 (2005), we affirm.

The parties own adjoining parcels in Shady Cove. Plaintiff's parcel lies to the north of defendants'. Both parcels are bound on the west by Crater Lake Highway and on the east by the Rogue River. The parties acquired their respective properties relatively recently. Defendants acquired their parcel in 2001; plaintiff acquired his in 2003. The dispute in this case centers on a 23.6-foot-wide strip of land that runs the length of both parties' parcels. The disputed strip lies between the actual boundary line, as described in deeds to the two parcels, and a low, cinder block wall on defendants' property. Until recently, there was also a concrete curb directly in line with the wall.[1] The record does not disclose who constructed the wall and curb or when they were built. However, both are visible in an aerial photo taken in 1969.

Also visible in that photo is a driveway on the south side of the house now owned by plaintiff. The driveway ran from the highway approximately one-third of the length of the property, along the curb and cinder block wall, before turning north and curving around to the back of the house. Part of the basement served as a garage and was accessible by vehicle only by driving around the house. The driveway appears in the photo to provide the only access to the back of the house. The photo also shows a vehicle parked in the yard area behind the house.

Another aerial photo was taken of the area in 1991. At least part of the driveway is visible in that photo as well, as are what appears to be a boat and at least one vehicle parked behind the house. The photo also shows that someone had fairly recently planted a row of trees along the north side of the wall.[2] In other photos taken from the ground after this

---

[1] Defendants removed the curb sometime after this action was commenced.

[2] The record does not reveal who planted the trees or how long they have been there. However, they are not visible in the 1969 aerial photo or in another taken in 1978.

action commenced, the trees are considerably larger and have grown together to form a privacy hedge.

Plaintiff's property has changed ownership approximately a dozen times over the last several decades. As pertinent here, it was purchased in 2001 by Plummer, who died after living in the house for a short time. The dispute underlying this case began in 2002, after the property was listed for sale and a prospective buyer requested that it be surveyed. On April 22, 2002, a surveyor, Kaiser, determined that the true boundary line lies well north of the curb and wall. The realtor who had listed the property for sale informed defendants of the discrepancy, and they hired Kaiser to survey their property. Kaiser conducted that survey on July 2, 2002, and confirmed that the true boundary line is 23.6 feet north of the curb and the wall.[3]

The boundaries—apparent and legally described—are depicted in the following not-to-scale diagram:

---

[3] After conducting the second survey, Kaiser concluded that there is a discrepancy in defendants' deed as a result of the fact that the parcel is composed of two strips that are separately described in the deed using different reference points. The two strips are described as being 20 feet wide and 60 feet wide, respectively. The southwest corner is marked with a brass pipe in the ground. The wall and the curb were constructed directly in line with a point on the western boundary that is 79.9 feet north of the brass pipe, evidently in the belief that the northern boundary of defendants' parcel lies 80 feet north of the brass pipe. However, properly measured using the described surveyor's monuments, the whole parcel is in fact 103.5 feet wide, meaning that the northwest corner is actually 103.5 feet, not 80 feet, north of the brass pipe, and thus that the northern boundary is 23.6 feet north of the curb and the wall. Kaiser described the discrepancy as an "overage," stating that no properties are left short.

Plummer's property was eventually purchased by the Lieberfreunds.[4] They initiated this quiet title action, claiming adverse possession and seeking a declaratory judgment declaring them to be owners of the property north of the wall and curb. Plaintiff acquired the property from the Lieberfreunds in 2003 and was substituted as plaintiff in this action.

Trial took place in 2004. Plaintiff called seven witnesses to testify in his behalf. Each of those witnesses testified that the wall and curb appeared to form the boundary between the two parcels. Several of the witnesses were long-time residents of Shady Cove and stated that they had always believed that to be the actual boundary. Some of the witnesses testified that they had seen cars using the driveway on the disputed strip to access the house on plaintiff's property—or even that they had used it themselves. Several witnesses also testified that former residents of plaintiff's property had maintained the landscape up to the wall and curb. One witness, Richie, had herself owned the property from 1988 to 1992. She stated that she had used the driveway and maintained the property up to the wall and curb. She stated further that it had appeared to her that the previous owner had used the property in the same manner.

Several of plaintiff's witnesses testified that the house on plaintiff's property had periodically been vacant. For example, Petrich, the real estate agent who represented defendants when they bought their property, stated that the house was vacant "most of the time." On further questioning, he explained that it was vacant for "periods of months" over the years and that, before Plummer bought the house, "it was vacant for a long time." Malepsy, the real estate agent who listed the property after Plummer died, stated that it had been "an on-and-off-again property, as far as vacancy and ownership." He explained further that he thought there had been half a dozen renters or owners in the 30 years that he

---

[4] The record does not indicate when the Lieberfreunds purchased the property. However, it appears that the conveyance occurred between April 22, 2002, when Kaiser conducted the first survey, and July 23, 2002, when the Lieberfreunds initiated this action.

had been in the area and that, between residents, the house was vacant for approximately six months at a time.

After plaintiff's case-in-chief, defendants called several witnesses. One witness, Monty Clemmer, stated that, since 1994, he had had coffee every morning at the restaurant across the street from the parties' properties. He testified that the house had remained vacant the entire time from 1994 until Plummer bought it. Another witness, Robert Bordner, testified that he had lived in or near Shady Cove since 1977 and had driven past the house virtually every day. He stated that the house was unoccupied in 1977 and that he had not noticed anyone living there until Plummer bought it and hired him to do remodeling work. He testified further that, when he went to work on the house, there was no driveway visible on the south side; he stated that he drove down the north side to access the back of the house. Bordner also stated that the property around the house was "overgrown." He described the property along the cinder block wall as "overgrown," "neglected," and "not maintained." Defendants also called Dorothy Bordner, who testified that she had driven past the house every morning and evening five days a week from 1978 until she retired in 1991 and periodically thereafter. She stated that the house appeared to be vacant, that the "whole property was weeds," and that "it looked like the windows were broken."

The trial court issued a written opinion in which it stated that

> "the only conclusion that can be drawn from the testimony of all the witnesses taken together is entirely consistent with the evidence shown in the photographs. That is, the concrete wall was used as the property line between these two properties and plaintiff's predecessors used that property up to the wall."

The court entered a judgment awarding plaintiff title to the disputed strip. This appeal followed.

■ Defendants assign error to the trial court's finding that plaintiff established adverse possession by clear and convincing evidence. They argue that there is no direct testimony or documentary evidence supporting the finding.

Defendants make two principal arguments as to why plaintiff did not meet his burden of proof. First, they contend that plaintiff did not prove that he and his predecessors in interest maintained adverse possession over the entire disputed strip. Specifically, defendants challenge the conclusion that plaintiff satisfied the "actual," "continuous," and "hostile" elements of his claim. Second, they assert that plaintiff did not prove that, when he first entered into possession of the property, he had an honest belief that he was the actual owner of the disputed strip and that his belief and that of his predecessors continued throughout the vesting period.[5]

Adverse possession is governed in Oregon by both common law and statute. At common law, to establish ownership by adverse possession, claimants must prove by clear and convincing evidence that, for a ten-year period, they or their predecessors in interest maintained actual, open, notorious, exclusive, hostile, and continuous possession of the property. In 1989, the legislature enacted ORS 105.620, codifying the common law and adding an "honest belief of actual ownership" requirement.[6]

---

[5] Defendants also argue that plaintiff did not establish privity with his predecessors in interest because there is "absolutely no evidence in the record" that plaintiff's predecessors intended to transfer to him any right in the disputed area. *See Timber Service Co. v. Ellis*, 163 Or App 349, 353-54, 988 P2d 396 (1999) (to tack ownership to that of a predecessor in interest, a property owner must show that the predecessor intended to transfer whatever adverse possessory rights he or she may have acquired). Legal sufficiency of the evidence may be raised on appeal only if it was raised at trial by a motion for judgment of dismissal pursuant to ORCP 54 B(2) or a timely equivalent, *Falk v. Amsberry*, 290 Or 839, 843-45, 626 P2d 362 (1981), which defendants did not do. Because the argument is unpreserved, we do not consider it.

[6] ORS 105.620(1) provides:

"A person may acquire fee simple title to real property by adverse possession only if:

"(a) The person and the predecessors in interest of the person have maintained actual, open, notorious, exclusive, hostile and continuous possession of the property for a period of 10 years;

"(b) At the time the person claiming by adverse possession or the person's predecessors in interest, first entered into possession of the property, the person entering into possession had the honest belief that the person was the actual owner of the property and that belief:

"(A) By the person and the person's predecessor in interest, continued throughout the vesting period;

"(B) Had an objective basis; and

"(C) Was reasonable under the particular circumstances; and

We begin with defendants' argument that plaintiff failed to show continuous use of the disputed strip. In support of their argument, defendants rely on the evidence that plaintiff's property was at times vacant. They assert that, to be continuous, the use of the property must be constant and not intermittent, citing *Hoffman v. Freeman Land and Timber, LLC.*, 329 Or 554, 560, 994 P2d 106 (1999).

As a threshold matter, we must resolve the factual dispute as to the length of the periods that the property was vacant. According to two of plaintiff's witnesses, the property was vacant for perhaps as long as six months at a time in between owners or tenants. Defendants adduced testimony that the property was vacant the entire time from 1977 until Plummer moved into the house in 2001. The trial court found that none of the witnesses was intentionally dishonest; it ascribed the inconsistency in their testimony to differences in perception. We accept that characterization and find that, although the property may have appeared to defendants' witnesses to be vacant, their perceptions were incorrect. Richie's testimony that she lived in the house for three years directly contradicts the evidence that defendants adduced.

■  We also conclude that, although the house was vacant at times, the vacancies were not so long as to be inconsistent with continuous use. To establish continuous use, the claimant "must keep his flag flying, and present a hostile front to all adverse pretensions." *Hoffman*, 329 Or at 560 (internal quotation marks omitted). The use itself must be the same as "would be made by an owner of the same type of land, taking into account the uses for which the land is suited." *Allison v. Shepherd*, 285 Or 447, 452, 591 P2d 735 (1979). It is not unusual for residential property to be sold or, if it is used as rental property, for tenants to leave, and for the property to be vacant, even for months at a time, between residents. Furthermore, although the driveway may not have been used by an owner or tenant during periods of vacancy, there is evidence that it was used by realtors and prospective

---

"(c)  The person proves each of the elements set out in this section by clear and convincing evidence."

The "honest belief" requirement in paragraph (b) applies only to claims that vest after January 1, 1990. Or Laws 1991, ch 109, § 3.

buyers during those times; that use is also consistent with the normal use of such property. *Cf. Montgomery v. Sellers,* 48 Or App 719, 724, 618 P2d 5, *rev den,* 290 Or 211 (1980) ("Although [the claimants] did not do much with the disputed strip of property, they used it in the same way they used the rest of their land: they used it for recreation, they did some trimming and clearing and they occasionally repaired the fence. These are the types of uses to which an owner would put such land."). In any event, even while the house was vacant, the driveway remained a constant feature that kept the "flag flying." *See Nooteboom v. Bulson,* 153 Or App 361, 365, 956 P2d 1042, *rev den,* 327 Or 431 (1998) ("[T]he significance of [an improvement on land] in any particular case depends on the character of the land and what the [improvement] communicates to others about possession of the disputed property."); *cf. Montagne v. Elliott,* 193 Or App 639, 650-51, 92 P3d 731 (2004) (holding that, in prescriptive easement context, the existence of a well-established road puts the owner of the underlying land on notice even if there are long periods during which the road is not actually used). We hold that plaintiff established continuous use.

■     We next consider defendants' argument that plaintiff did not prove by clear and convincing evidence that his predecessors in interest actually possessed the entire disputed strip. Defendants contend that, even if plaintiff's evidence established use of the driveway itself, the evidence did not demonstrate use of the area between the driveway and the river or of the area between the driveway and the wall and curb.

We disagree. Richie testified that she maintained the property up to the wall and that it appeared to her that the former owners had done the same. The 1991 aerial photo substantiates Richie's assertion; in the photo, plaintiff's parcel is readily distinguishable from the surrounding properties, indicating that it was maintained differently from the other properties, and it is uniform all the way up to the wall. Moreover, even if other owners did not maintain the property all the way to the wall, the existence of the driveway indicates that the owners considered the curb and the wall to be the boundary and treated the property on their side as their

own. *See Nooteboom,* 153 Or App at 365. It is irrelevant that the driveway did not extend all the way to the river and that there was a small amount of space between the driveway and the curb and wall. The location of the driveway is no different from what one would expect if plaintiff's predecessors had held title to the disputed strip. *See Allison,* 285 Or at 452 (actual use is satisfied if the claimants establish "use of the land that would be made by an owner of the same type of land, taking into account the uses for which the land is suited"). We reject defendants' argument that plaintiff failed to establish adverse possession over the entire disputed strip.

■        We turn next to defendants' argument that plaintiff failed to establish hostility. "To establish the requisite hostility, a claimant must demonstrate a subjective intent to 'possess[ ] the property intending to be its owner and not in subordination to the true owner.' " *Hoffman,* 329 Or at 561 (quoting *Faulconer v. Williams,* 327 Or 381, 389, 964 P2d 246 (1998)). Hostility can be established by circumstantial evidence. *See Grimstad v. Dordan,* 256 Or 135, 140-41, 471 P2d 778 (1970) (holding that circumstantial evidence indicated intent to occupy land in spite of conscious doubt about true location of boundary). However, the Supreme Court held in *Hoffman* that, unlike in the context of prescriptive easements, proof of open and continuous use for a 10-year period does not give rise to a presumption of hostility in adverse possession cases. 329 Or at 562. We infer from that holding that evidence showing open and continuous use cannot, by itself, suffice to establish hostility. In other words, there must be additional evidence.

In this case, there is evidence in addition to the existence and use of the driveway. Richie's testimony constitutes direct evidence of hostility for the period that she owned the property. There is also other circumstantial evidence: Several long-term residents of Shady Cove testified that, to the best of their knowledge, "everybody" in the community believed that the curb and wall formed the boundary between the two properties and that no one had ever disputed the boundary location. One witness, Strodthoff, testified that she had walked the full property with a realtor and was "under

the assumption" that the disputed strip was part of the property.[7] Finally, the fact that defendants themselves believed that the curb and the wall formed the property suggests that their predecessors in interest, the Williamses, who had owned the property since 1984, held the same belief. It seems very unlikely that the Williamses would not have informed defendants where the true property line was if they had known that it was not where it appeared to be; the revelation of the true property line would have meant that the parcel was more than 25 percent larger than it appeared to be.

In light of the physical appearance of the property, Richie's testimony, and the uncontradicted evidence that it was widely, if not universally, believed that the curb and wall formed the property boundary, in addition to the evidence that the driveway existed continuously and openly for many years and was used by the former owners and tenants of plaintiff's property, we conclude that it is highly probable that, for at least 10 years, plaintiff's predecessors in interest believed that they actually owned the disputed strip and, thus, that they did not possess it in subordination to the true owners. Accordingly, plaintiff satisfied the hostility element of his claim.

We conclude further that the record shows that plaintiff's predecessors in interest adversely possessed the disputed strip for at least 10 years before 1990—in other words, we conclude that the adverse possession claim vested before 1990. Our conclusion forestalls defendants' argument that plaintiff did not satisfy the "honest belief" requirement in ORS 105.620(1)(b). That statute applies only to claims that vest after January 1, 1990. Or Laws 1991, ch 109, § 3. It follows that the "honest belief" requirement is inapposite in this case.[8] *Markovich v. Chambers*, 122 Or App 503, 506, 857 P2d 906 (1993).

---

[7] Strodthoff did not specify when she had been on the property with the realtor; she said only that it was "years ago."

[8] Defendants acknowledge that the statutory requirement applies only to claims that vested after January 1, 1990, but they contend that, because plaintiff did not identify the precise 10-year period for which he was claiming adverse possession, he must satisfy both the common law and the statutory requirements. Defendants cite no authority for that proposition, and we are aware of none. To the contrary, in *Nooteboom*, in which the parties adduced evidence about use of disputed property from 1946 to 1995, we found it unnecessary to analyze that entire time period because we found that title had vested in the claimants by 1956. 153 Or

In summary, plaintiff showed by clear and convincing evidence that, for at least 10 years before 1990, his predecessors in interest adversely possessed the disputed strip. The trial court did not err in entering judgment for plaintiff.

Affirmed.

App at 364 n 1. We stated further that, for the same reason, we did not need to consider whether the claimant had satisfied the statutory "honest belief" requirement. *Id.* We reject defendants' argument without further discussion.