On respondent's petition for reconsideration filed October 3, reconsideration allowed; former opinion (214 Or App 473, 166 P3d 1137) adhered to December 26, 2007

Carley FRAKER
and Carol Fraker,
individually
and as guardian ad litem for
Kelsey Fraker, a minor,
*Plaintiffs-Appellants,*

*v.*

BENTON COUNTY SHERIFF'S OFFICE,
Benton County Community Corrections,
and Lincoln County Sheriff's Office,
*Defendants,*

*and*

Debbie Marie COTTENGIM,
*Defendant-Respondent.*

Benton County Circuit Court
0010060; A125743

174 P3d 1111

Rod M. Jones for petition.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Edmonds, Judge.

BREWER, C. J.

**BREWER, C. J.**

Defendant Cottengim has filed a petition for reconsideration of our original decision in this case. *Fraker v. Benton County Sheriff's Office*, 214 Or App 473, 166 P3d 1137 (2007). She argues that our decision is infected by a factual error, namely, the statement that there is evidence that "the gun that defendant took from Fraker was the one that he used to terrorize plaintiffs[.]"[1] *Id.* at 492. According to defendant, there is no such evidence in the record and, therefore, the trial court properly granted summary judgment in defendant's favor. We grant reconsideration and adhere to our original decision.

Defendant acknowledges that she took a gun from Fraker and that he saw her put the gun in the trunk of the car that she later lent to him and that he took to plaintiffs' home when he terrorized them. Defendant's sole point on reconsideration is that she testified in her deposition that she later removed the gun from the trunk of the car and put it in a storage location that Fraker did not know about and, therefore, he must have used a second gun in the "terror" incident.

Of course, that is defendant's theory of the case, but, as explained in our original decision, we review the record, including all inferences that reasonably may be drawn from the evidence, in the light most favorable to plaintiffs, the non-moving parties. *Id.* at 475. Although it was not necessary to elaborate on it in our original decision, in light of the more targeted challenge in defendant's petition for reconsideration and to leave no mistake about our reasoning, we now describe in more detail the pertinent evidence concerning the "terror weapon."

In her affidavit opposing summary judgment, plaintiff Carol Fraker, Fraker's former spouse, averred that Fraker "always owned a handgun and took it with him everywhere." She also stated that, during the terror incident:

---

[1] Although defendant does not refer to all of them, there are several additional references to her involvement with the gun in the opinion. *See Fraker*, 214 Or App at 476, 491-93.

"17.   * * * Ken met me with his handgun aimed point-blank * * *.

"18.   I recognized the handgun as the one that Ken had taken with him when he moved out of [our house] in 1998 * * *.

"19.   Ken bragged that he had outsmarted airport security and smuggled his handgun aboard the commercial airliner that [defendant] met at the Portland Airport.

"20.   I later obtained that handgun—a Llama Comanche .357 magnum revolver—from Toledo Police Department pursuant to an amended order signed by [a Lincoln County Circuit Court judge] * * *."

In addition, Carol Fraker stated that, during the terror incident,

"33.   Ken said that he told [defendant] while parked at the entrance to the driveway that he was going to shoot me and my daughters dead, then turn the gun on himself.

"34.   Ken said that [defendant] talked him out of that, he left his handgun with [defendant], and they went on to the Lincoln county jail where Ken turned himself in."

Plaintiff Carley Fraker, Fraker's stepdaughter, averred as follows in her affidavit:

"7.   My stepfather had a .357 magnum revolver that he took everywhere with him.

"* * * * *

"11.   I returned to our Toledo home on December 22, 1998 * * * to find my stepfather there with his .357 magnum revolver.

"* * * * *

"24.   My stepfather bragged about his skills, saying that he'd outsmarted security and smuggled the .357 aboard the commercial airline flight from Arizona to the Portland Airport."

The foregoing testimony—viewed in the light most favorable to plaintiffs—shows that the weapon that Fraker used during the terror incident was the weapon that he always carried with him, the weapon that he smuggled

through airport security when he arrived in Portland and defendant picked him up, and the same weapon that defendant took from Fraker during the earlier episode, referred to in our earlier decision, in which he had threatened to kill plaintiffs. *Id.* at 476.

Defendant's story is that she took a different weapon from Fraker, one that she later gave her friend Cody Frakes, with an understanding that he would buy it from her at a price to be determined later. She argues that, in the absence of evidence contradicting her testimony in that regard, a trier of fact would be required to accept it, and there is no evidence to suggest differently. But, that argument fails to consider both the foregoing evidence and additional evidence in the record.

In his deposition, Frakes testified that defendant gave him a Russian nine millimeter semiautomatic handgun three weeks after Fraker's suicide. Later, after this action was commenced and plaintiffs made a discovery request for the "second gun," defendant asked Frakes for the weapon, and he told her that he did not have it. According to Frakes, the weapon was confiscated by the police when they stopped him in a traffic incident in 2000 because he had a criminal record and was not permitted to carry a gun.

Defendant never told the police officers who investigated the terror incident about the supposed second gun. Deputy Van Arsdall, one of those officers, stated in his written report, "[Defendant] told me that she had no idea where Fraker would have obtained a gun. [Defendant] stated she had never seen one in the house."

In her deposition, defendant stated that, on the trip from the airport to the police station,

"[Fraker] did mention that he had a gun, and I asked him where it was, and it was on his belt. So I asked him to take it off and give it to me. So he got out of the car, he took it off, he gave it to me. I put it in the trunk, and we got back in the car and drove straight to the police department."

Defendant also testified that the weapon she took from Fraker was a "revolver." Defendant acknowledged that, after the terror incident, she did not tell the investigating officers

that she had taken a gun from Fraker. Instead, she told the officers that she "knew of no weapons." Defendant was asked to produce the "second gun" after this action was filed. According to defendant, Frakes told her that he had sold the gun.

From the foregoing additional evidence, a trier of fact could find that defendant and Frakes fabricated the story after this action was filed in order to protect defendant from liability. That inference is supported by defendant's failure to disclose the existence of the second gun to the police during the investigation of the terror incident, the inconsistencies between defendant's testimony and Frakes's testimony about what ultimately happened to the "second gun," and defendant's admission that the gun she took from Fraker was a "revolver." Again, Fraker's .357 magnum was a revolver, not an automatic or semiautomatic weapon.

Nor does defendant's story explain where Fraker would have concealed the "terror weapon"—that is, the .357 magnum—when he turned himself in. The uncontradicted evidence showed that he carried that gun with him all the time and that he gave a weapon to defendant on his way to turn himself in to the police. If, as defendant asserts, Fraker gave her a semiautomatic weapon, not the .357, Fraker must have secreted the .357 somewhere else. But, it is reasonable to infer that Fraker had no opportunity to do so outside defendant's presence between his arrival at the Portland Airport and his surrender to the police. That inference is consistent with plaintiffs' other evidence—including reasonable inferences therefrom—that the weapon that Fraker gave to defendant and that she placed in the trunk of her car was the .357, not a different weapon.

In short, a trier of fact would not have been required to adopt defendant's view of the evidence in light of the other evidence summarized above, which supports the inference that there was only one gun and that Fraker retrieved it from the trunk of defendant's car and terrorized plaintiffs with it. Accordingly, we adhere to our original decision that the trial court erred in granting summary judgment to defendant.

Reconsideration allowed; former opinion adhered to.