Argued and submitted August 18, 2011, affirmed May 16, 2012

William C. CASE
and Gail K. Case,
*Plaintiffs,*

*and*

CASE FARMS, LLC,
an Oregon limited liability company,
*Plaintiff-Appellant,*

*v.*

Gary L. BURTON
and Goldie H. Burton,
husband and wife,
*Defendants-Respondents.*

Linn County Circuit Court
081200; A144494

279 P3d 259

George B. Heilig argued the cause for appellant. With him on the briefs was Heilig Misfeldt & Armstrong, LLP.

Mark C. Hoyt argued the cause for respondents. With him on the brief was Sherman, Sherman, Jonnie & Hoyt, LLP.

Before Schuman, Presiding Judge, and Brewer, Judge, and Nakamoto, Judge.

BREWER, J.

**BREWER, J.**

Plaintiffs appeal from a general judgment dismissing their common-law and statutory adverse possession claims against defendants.[1] At the close of plaintiffs' case-in-chief, the trial court granted defendants' motion for a directed verdict, construing it as a motion to dismiss under ORCP 54 B(2), and made findings of fact under ORCP 62. Among other things, the trial court found that, as a fatal blow to their claims, plaintiffs had failed to establish the location of a fence line that, according to plaintiffs, had bounded the property that they claim. We affirm.

We begin by setting out the standard for the grant of a motion for judgment of dismissal under ORCP 54 B(2), which provides:

> "After the plaintiff in an action tried by the court without a jury has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a judgment of dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment of dismissal against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment of dismissal with prejudice against the plaintiff, the court shall make findings as provided in Rule 62."

ORCP 62 F, in turn, provides:

> "In an action tried without a jury, except as provided in ORS 19.415(3), the findings of the court upon the facts shall have the same force and effect, and be equally conclusive, as the verdict of a jury."

> "In deciding whether to grant a motion to dismiss with prejudice under ORCP 54 B(2), the trial court is *not* required to view the evidence in the light most favorable to the plaintiff and to deny the motion if the plaintiff has

---

[1] The plaintiffs in this case are Case Farms, LLC and William and Gail Case, the owners and only members of Case Farms, LLC.

proffered 'some evidence' establishing the requisites of a *prima facie* case."

*Venture Properties, Inc. v. Parker*, 223 Or App 321, 340, 195 P3d 470 (2008) (emphasis in original). "Rather, even if a plaintiff has presented a *prima facie* case, a trial court is free to assess the ultimate persuasiveness of the plaintiff's evidence * * * including resolving conflicts in that evidence * * * and, if it so chooses, to simply disbelieve the plaintiff's evidence." Id. (citations omitted); *see also Riverside Homes, Inc. v. Murray*, 230 Or App 292, 300-01, 214 P3d 835 (2009) ("[A] trial court may grant a motion to dismiss under ORCP 54 B(2) if, viewing the evidence in the light most favorable to the plaintiff, the plaintiff failed to present a *prima facie* case, or, even if the plaintiff has presented a *prima facie* case, the court, as trier of fact, is unpersuaded by the plaintiff's evidence.").

Where a claim dismissed with prejudice under ORCP 54 B(2) is equitable in nature, this court's review is set out in ORS 19.415(3)(b), and we have discretion to review the case *de novo*, Or Laws 2009, ch 231, § 3. We decline to do so. ORAP 5.40(8)(c). Accordingly, we review the trial court's legal conclusions for errors of law, and we are bound by the trial court's findings of fact if any evidence supports them. *Jones v. Emerald Pacific Homes, Inc.*, 188 Or App 471, 481, 71 P3d 574, *rev den*, 336 Or 125 (2003) ("We will not reject a trial court's finding [under ORCP 62 F] if any evidence in the record supports it."); *Neff v. Sandtrax, Inc.*, 243 Or App 485, 487, 259 P3d 985, *rev den*, 350 Or 716 (2011) (applying "any evidence" standard of review to equitable claims where notice of appeal was filed after the effective date of the 2009 amendments to ORS 19.415(3)).

We state the pertinent facts consistently with the trial court's findings under ORCP 62.[2] The parties own adjoining parcels of farmland in Linn County. Plaintiffs own tax lot 700, and defendants own tax lot 500. There is no natural boundary between the two parcels. At issue is a strip of

---

[2] As explained below, because the trial court's finding that plaintiffs failed to establish the location of the fence line is dispositive, we need not reach the parties' remaining arguments and, accordingly, we do not recite the facts that are pertinent only to those arguments.

land along the eastern deed line of tax lot 500, the line that separates that lot from tax lot 700. According to a survey that William Case obtained in 2008, the strip is between 42.45 and 51.7 feet wide and 2008.04 feet long, and it consists of 2.02 acres in area. The eastern border of the strip is the eastern deed line of tax lot 500. The parties' dispute involves the location within tax lot 500 of the western border of the strip.

Plaintiffs argued to the trial court that the western border of the strip was a fence that had been built on tax lot 500 by defendants' predecessor in 1940 and that had remained continuously in place until the mid-1980's, when William Case dismantled it. Plaintiffs also argued that a farm road had paralleled the fence line throughout that period and also established the western border of the strip. To establish the location of the fence line and the farm road, plaintiffs offered into evidence a series of aerial photographs taken between 1948 and 2008 that, plaintiffs argued, demonstrated that the fence and road had remained fixed throughout the periods of time necessary to establish their common-law and statutory adverse possession claims. Along with those photographs, plaintiffs adduced testimony from witnesses regarding their recollections of the location of the fence and road. William Case also testified that the fence and road had always been roughly 50 feet to the west of the eastern deed line of tax lot 500.

To establish ownership of the disputed strip by adverse possession, William Case testified that he, and his father before him, had continuously farmed the strip from 1944 to 2007, when defendants purchased tax lot 500. According to Case, defendants' predecessor, Jones, had told Case and his father that the fence line was the "property line" dividing tax lot 500 from tax lot 700, and he and his father had always understood that the fence line was the property line.

Plaintiffs' witnesses, Hoefer and Chambers, were asked to look at the series of aerial photographs that plaintiff offered into evidence and identify where the farm road and fence line had been located. On cross-examination, both witnesses were equivocal with regard to the location of the fence line and the farm road, and their placement of the fence line

and the farm road in relation to other landmarks visible from the air, such as trees and vegetation, changed from photograph to photograph. Plaintiffs also offered into evidence a perpetuation deposition of another witness, Keller, who had visited the Jones farm during the 1940s and 1950s. Keller had testified that, in 1950, the fence had been tied to a large tree near Dever-Connor Road at the northern end of the properties. When Keller was asked on cross-examination to identify that large tree on the 1948 aerial photograph, she was unable to do so. Keller also was cross-examined regarding the location of the fence line and the farm road on the aerial photographs, and she was unable to consistently locate them by reference to other landmarks shown on the photographs, such as a line of large fir trees across Dever-Connor Road to the north of the strip and a large tree at the southern end of the strip. In addition, William Case testified that the farm road had continuously been in one place and that it had been located adjacent to the fence line. On cross-examination, Case was confronted with his prior deposition testimony that the farm road had at times been tilled under, and he admitted that there had been times when portions of the road had been completely erased.

Case also testified that in approximately 1985 or 1986 he had installed a large irrigation pivot on his property. Although the center of the pivot is on plaintiffs' property, the pivot's arm extends past the eastern deed line of tax lot 500 during its rotation. Case testified that he had positioned the pivot so that it would only water crops on his property. Case further testified that crops planted on tax lot 500 had always been planted in rows running north to south whereas crops planted on his property had always been planted in rows running east to west. On cross-examination, Case was shown an aerial photograph taken while the pivot was in operation showing it watering a section of crops planted in rows running north to south. Case replied that the water must have been blown by the wind.

In considering defendants' motion under ORCP 54 B(2), the trial court found that the aerial photographs and the testimony of William Case and plaintiffs' other witnesses regarding the location of the farm road were equivocal and that no witness was able to fix the location of the road with

sufficient certainty to allow the court to determine that plaintiffs had adversely possessed any specific portion of tax lot 500 for the requisite 10-year period. The court explained:

"I am not convinced that the line has remained static over the years based on the evidence. It may have, but the evidence doesn't prove that, and in fact the evidence indicates that the line almost certainly moved, especially once the fence was taken down. The property description, which goes to the objective intent of the plaintiff, is at variance with where he claims the line was maintained and where some of the photographs indicate the line was maintained, but not all the photographs. In a nutshell, there isn't enough to prove the line as being consistently maintained for ten years or more during any single period of time, so that motion is allowed."

In response, plaintiffs urged the trial court to look at the evidence of the location of the irrigation pivot that William Case had installed in "1995 or 1996" because "there is no evidence that it was other than being on the land that was being possessed, and you couple that with where the crop lines are, I mean, there is clear and convincing evidence that that land was being possessed beyond the surveyed line."[3] Plaintiffs argued, in effect, that, notwithstanding the discrepancies that the court identified in the evidence prior to "1995 or 1996," evidence of the pivot's location proved the boundaries of the disputed strip for purposes of their statutory adverse possession claim, because that pivot had been in place for more than 10 years after 1990.[4] The trial court disagreed:

"But isn't the problem there, [defense counsel], that the pivot was put in after the statute was passed. Your argument has persuasion if we were under common law, but since 1995 we've been under the statutory definition which requires that objective belief, and since then objectively the definition of that line could not be as far as the pivot may go.

---

[3] Although counsel indicated that the pivot had been in place since 1995 or 1996, plaintiff William Case testified that is was installed in 1985 or 1986. That discrepancy has no bearing on our analysis because, as explained below, there is evidence in the record to support the trial court's finding that the location of the pivot was insufficient to establish the western boundary of the strip.

[4] As explained below, in Oregon claims for adverse possession that vest after January 1, 1990, are governed by ORS 105.620.

Now, there's some discrepancy about how far the pivot goes, because, as [William Case] testified, it depends on which way the wind is blowing, so it's hard to tell from the photographs whether you're actually looking at how far the irrigation goes or how far the actual pivot line is, but even if you take that away and say that the line as it appears on the picture will be given—you know, we'll give the best argument to the plaintiff, the reality is, is that during that period of time since the pivot was installed we're under the statutory definition of adverse possession which requires objective belief, not just subjective belief."

Plaintiffs remonstrated that the court had "a number of choices here," including the conclusion that Case's father had perfected a claim for adverse possession of the strip by farming it between 1944 and 1957. In response, the trial court further explained:

"The problem is we don't know where the line was that [William Case's father] used. That's the problem. Because this line definitely moved. These photographs—the cross-examination on these photographs demonstrated without any doubt that this line moved. There's no doubt this line moved. It did not stay static ever since 1947. It just did not. I am satisfied of that. The trees don't move, the water line didn't move. What moved was the line. What I can't tell is when it moved, and since I can't tell when it moved you haven't proven how long it remained in place, and therefore you haven't proven by clear and convincing evidence that there was a ten year continuous possession of the entire parcel of land between what the deed line is and what the line is that is now being claimed by [plaintiff].

"* * * * *

"Crop lines move. And the only things in these pictures that's fixed are the roads and the trees, and even the trees could be subject to some movement, but everything else is subject to being plowed under, to being moved, to being changed. We just—you can't say that with any certainty beyond what's been testified to, and I've listened very carefully to the testimony and considered that in deciding it.

"* * * * *

"[The witnesses'] testimony was not unequivocal. [Plaintiff's] testimony was to some extent impeached on

cross-examination, and, in fact, despite his assertion that the line has never moved the photographs show that it has."

Plaintiffs renew their arguments on appeal, asserting that they are the owners of the disputed strip based on either common-law adverse possession by virtue of William Case's father's use of the strip from 1944 to 1957, or by Case's own use of the strip from 1957 to 2007. Plaintiffs also claim title by statutory adverse possession, arguing that aerial photographs of the location of one of their irrigation pivots, and the extension of that pivot's rotating arm and water spray into a portion of the disputed strip from roughly 1985 to 2007, proved that they had adversely possessed the entire strip. Plaintiffs also argue that William Case held an "honest belief" that he was the actual owner of the strip because of Jones's representation that the fence line was the property line, and because both Case and his father had farmed the disputed strip consistently with that belief.

Defendants reply that there is evidence in the record to support the trial court's finding that plaintiffs failed to prove the location of the fence line and farm road and, further, that an adverse claimant must present clear and convincing evidence identifying the boundaries of the disputed property and that plaintiffs failed to do so. We agree with defendants.

In Oregon, adverse possession is governed by both common-law and statutory principles. To succeed on a claim of common-law adverse possession, a claimant must prove by clear and convincing evidence that he or she or a predecessor in interest made use of the property that was actual, open, notorious, exclusive, continuous, and hostile for a 10-year period. *Lieberfreund v. Gregory*, 206 Or App 484, 490, 136 P3d 1207 (2006). Proof that a predecessor in interest adversely possessed the property for the statutory period is sufficient if there is evidence that the predecessor intended to transfer whatever adverse possessory rights he or she may have acquired. *Id.* at 490 n 5 (citing *Timber Service Co. v. Ellis*, 163 Or App 349, 353-54, 988 P2d 396 (1999)).[5] ORS

---

[5] The parties do not dispute that William Case's father intended to transfer whatever adverse possessory rights he may have acquired when he sold tax lot 700 to plaintiff William Case in 1976.

105.620, in turn, codifies the common law and adds a requirement that, at the time the claimant first entered into possession of the property, the claimant had an "honest belief" of actual ownership that had an objective basis and was reasonable under the circumstances. *Lieberfreund*, 206 Or App at 490.[6] That statute, however, applies only to claims that vested after January 1, 1990. Or Laws 1991, ch 109, § 3.

All the elements necessary to establish adverse possession must be proved by clear and convincing evidence. *Lieberfreund*, 206 Or App at 490. "This requirement [also] applies to identification of the property adversely used." *Winthers v. Bertrand*, 239 Or 97, 99, 396 P2d 570 (1964). In *Winthers*, the defendant, who claimed ownership by adverse possession of a strip of land on which she and her husband had built a tile chicken house, had testified:

"[t]o the use of the property. She identified the boundary by reference to a partially obliberated fence line, an iron stake at the corner of a little garage, and a slight bank of

---

[6] ORS 105.620 provides:

"(1) A person may acquire fee simple title to real property by adverse possession only if:

"(a) The person and the predecessors in interest of the person have maintained actual, open, notorious, exclusive, hostile and continuous possession of the property for a period of 10 years;

"(b) At the time the person claiming by adverse possession or the person's predecessors in interest, first entered into possession of the property, the person entering into possession had the honest belief that the person was the actual owner of the property and that belief:

"(A) By the person and the person's predecessor in interest, continued throughout the vesting period;

"(B) Had an objective basis; and

"(C) Was reasonable under the particular circumstances; and

"(c) The person proves each of the elements set out in this section by clear and convincing evidence.

"(2)(a) A person maintains 'hostile possession' of property if the possession is under claim of right or with color of title. 'Color of title' means the adverse possessor claims under a written conveyance of the property or by operation of law from one claiming under a written conveyance.

"(b) Absent additional supporting facts, the grazing of livestock is insufficient to satisfy the requirements of subsection (1)(a) of this section.

"(3) As used in this section and ORS 105.005 and 105.615, 'person' includes, but is not limited to, the state and its political subdivisions as created by statute."

earth. None of these objects can now be located definitely upon the ground.

"Defendant also identified the area used as extending east to within a few feet of the plaintiff's driveway, which driveway is still in use. If this testimony referred to that part of the driveway immediately east of the chicken house it encompasses the disputed area. However, it is not completely clear if it refers to this portion of the driveway or that south of the chicken house. It is also not clear whether the claimed use after 1952 was as large as the alleged use from 1946. On the other hand, previous owners of plaintiff's property from 1949 to 1961 both testified that the defendant and her husband did not use the area east of the surveyed boundary, as marked by a 1952 survey."

*Id.* at 98-99. The trial court found that the defendant had failed to identify the property she claimed by adverse possession, and the Supreme Court, reviewing the case *de novo*, agreed, holding that the defendant did not establish adverse possession because her "evidence locating the area of adverse use is not so specific and compelling that the trial court's findings to the contrary should be disregarded." *Id.* at 99.

Here, the trial court found that plaintiffs had failed to establish the location of the fence line and the farm road, and that the evidence showed instead "that the line almost certainly moved." There is evidence in the record to support that finding, and we are bound by it. Thus, plaintiffs failed to sufficiently identify the area of asserted adverse use. That failure is fatal to their claims for adverse possession under both the common law and ORS 105.620.

Affirmed.