Argued and submitted November 16, 2010, affirmed June 27, 2012

Bernard Z. AGRONS,
Trustee of the B. Z. Agrons
2002 Revocable Trust uda 12/20/02,
*Plaintiff-Respondent,*

*v.*

D. Brett STRONG
and Rebecca M. Strong,
*Defendants-Appellants.*

Klamath County Circuit Court
0401868CV; A143105

282 P3d 925

George W. Kelly argued the cause and filed the briefs for appellants.

Mark R. Weaver argued the cause for respondent. With him on the brief was Brophy, Schmor, Gerking, Brophy, Paradis & Maddox, LLP.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Brewer, Judge.*

---

* Brewer, J., *vice* Gillette, S. J.

BREWER, J.

## BREWER, J.

Defendants Brett and Rebecca Strong appeal from a general judgment awarding title to a strip of land enclosed by a fence on their property to plaintiff, an adjacent landowner, on the ground that plaintiff had acquired title to the strip by adverse possession. Defendants raise four assignments of error, all of which depend on a central proposition: that the trial court erred in allowing plaintiff to amend his complaint under ORCP 23 B to state a claim for adverse possession, because (1) that amendment prejudiced defendants, and (2) plaintiff failed to adduce sufficient evidence to support a claim for adverse possession.[1] Defendants argue, in the alternative, that, if the trial court properly allowed plaintiff to amend his complaint, the trial court nonetheless erred in awarding plaintiff the disputed strip because plaintiff had failed to prove the elements of common-law adverse possession by clear and convincing evidence. We affirm.

We review the trial court's ruling on plaintiff's motion to amend the pleading to conform to the evidence for an improper exercise of discretion. *Brasch v. Quan*, 162 Or App 472, 476, 986 P2d 1183 (1999). Under that standard of review, we will not disturb the trial court's ruling if, given the facts found by the court, it chose one among a variety of legally correct outcomes. *Berg and Berg*, 250 Or App 1, 2, 279 P3d 286 (2012).

In 2004, plaintiff filed a complaint seeking a declaration that a fence he had built and maintained was the boundary line between his property and defendants' property. Such a declaration would result in plaintiff being awarded the portion of the property that is enclosed by the fence. Plaintiff did not identify a discrete legal theory supporting his claim for declaratory relief. Plaintiff later moved for partial summary judgment, and the trial court held a hearing on that motion. In his motion for partial summary judgment, plaintiff advanced, among others, a theory of "boundary by agreement." The trial court denied that motion, ruling that there were disputed issues of fact and that, at

---

[1] In their third assignment of error, defendants argue that the trial court erred in denying their request to "reopen the case" after the trial but before entry of the final judgment. We reject that assignment of error without discussion.

that stage of the proceeding, plaintiff was not entitled to a judgment awarding him the disputed property under a theory of boundary by agreement.

At the close of plaintiff's evidence at trial, defendants moved to dismiss the case under ORCP 54 B(2), arguing that plaintiff had failed to prove a claim for boundary by agreement. Plaintiff objected, arguing that he had never limited his claim to only a theory of boundary by agreement. Plaintiff also moved to amend his complaint under ORCP 23 B to conform to the evidence that he asserted established his ownership of the disputed strip by adverse possession. The trial court took both motions under advisement, and defendants presented their evidence. After defendants rested, the trial court asked the parties for written closing arguments. The trial court issued its letter opinion on January 30, 2007, and it made the following findings of fact:

> "Plaintiff is the fee owner of certain real property * * * further described in the complaint filed herein. Defendants Strong are husband and wife. They are the fee owners of real property located immediately adjacent to [plaintiff's property]. The parcels lay such that plaintiff's south boundary forms the north boundary of defendants' property.
>
> "Both parties [mesne] chain of title originate from a common grantor, Ronald and Eunice Layton.
>
> "Plaintiff acquired his parcel in 1973. When he acquired the parcel, the boundary of plaintiff's parcel was separated from the north boundary of the adjoining parcel by a wire fence. Shortly after acquiring the property, plaintiff replaced the original fence with a wooden post and rail fence built to contain his horses. Plaintiff replaced the rotted and original posts with cemented posts in approximately the same location as the original posts.
>
> "Plaintiff believed the fence was the actual dividing line between his parcel and the parcel owned by defendants' predecessors in title. [A 1978 survey commissioned by defendants' predecessor, Rank,] disclosed the fence misplacement. There is no evidence in the record that plaintiff was aware of this survey or that [Rank] complained about the location of the fence. No information was brought to plaintiff to cause him to believe that there may be a problem with the location of the fence until approximately 10

years ago when Mr. Larry Peacore contacted plaintiff to advise him that he (Mr. Peacore) had built a fence on property adjoining plaintiff's fence and that plaintiff's fence line appeared to be askew.

"Plaintiff took no action to investigate the actual location of the property line. Then, sometime in the fall of 2002, the defendant purchased his parcel. Prior to closing, he commissioned a survey by Jerry Barrett, a registered professional surveyor. Mr. Barrett located two prior surveys; a 1965 survey and a June 1978 survey. The earlier survey did not disclose a fence line. The pins were set in 1965. Mr. Barrett's survey disclosed plaintiff's fence line deviated from those pins up to 23.6 feet on the west end of the fence line encroaching onto defendant's property. The deviation from the line runs approximately 280 feet, varying from a few inches up to 23.6 feet. Repairs and post replacements either by plaintiff or his contractors since 1978 have caused minor shifts in the fence location.

"* * * * *

"No predecessor in interest of defendant's property disputed the location of the fence until defendant contacted plaintiff in the fall of 2002. Sometime prior to defendant's closing date in December, 2002, defendant * * * contacted plaintiff to advise him of the fence deviation. Plaintiff responded by stating the fence marked the boundary and that he would not change it. This litigation ensued."

The trial court also denied defendants' ORCP 54 B(2) motion and granted plaintiff's ORCP 23 B motion, explaining:

"The court can find no prejudice to the defendant if the court allows the amendment. The claims of boundary by agreement and adverse possession are so closely related that evidence on one would also be applicable to the other. Defendant should not have been surprised or prejudiced in the presentation of his case. Because the court is of the opinion the need to resolve this dispute requires the issues to be decided on the merits, the court will allow the plaintiff's amendment to conform to the evidence of adverse possession."

The court then found that plaintiff had proved his claim for adverse possession by clear and convincing evidence:

"The court is convinced that plaintiff's use of the disputed area for a horse corral, including erecting and maintaining a fence satisfies the element of actual, open and notorious possession as well as demonstrates plaintiff's exclusive use of the disputed area.

"The time element (10 years) is satisfied. Plaintiff's credible testimony that beginning in 1973 he believed the fence line was the true southern boundary is a reasonable and honest belief based upon plaintiff's observation that the original fence was present when he took possession in 1973. There were no challenges to his ownership of the disputed area until defendant contacted him in the fall of 2002.

"The court will enter an order declaring the post and rail fence, as currently located, to be the dividing line between plaintiff and defendant's residence and that plaintiffs are the owners of all the right, title and interest in the property line directly north of the existing fence and further defendants shall not tamper with said fence."

Defendants assign error to the trial court's order granting plaintiff's motion to amend under ORCP 23 B. That rule provides:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice such party in maintaining an action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

As we explained in *Fraker v. Benton County Sheriff's Office*, 214 Or App 473, 481, 166 P3d 1137, *adh'd to on recons*, 217 Or App 159, 174 P3d 1111 (2007):

> "[T]he second two sentences of ORCP 23 B govern situations in which one of the parties does not consent to trial of unpleaded issues and, in fact, objects. In those situations, the trial court is called upon to exercise its discretion to determine whether 'presentation of the merits of the action will be subserved' by amendment and 'admission of such evidence' will not 'prejudice [the adverse] party in maintaining an action or defense upon the merits.'"

Because defendants objected at trial to plaintiff's assertion of a claim for adverse possession, this case implicates those provisions. Accordingly, plaintiff's motion to amend his complaint required the trial court to "exercise its discretion to determine whether 'presentation of the merits of the action will be subserved' by amendment and 'admission of such evidence' will not 'prejudice [the adverse] party in maintaining an action or defense upon the merits.'" *Id.* As noted, our review is for an improper exercise of discretion.

Defendants argue that the trial court improperly exercised its discretion because "adverse possession and boundary by agreement are entirely different [claims] and are proved from very different bodies of facts." Essentially, defendants argue that, because of the differences between the two theories, the trial court's decision to allow plaintiff to amend his complaint "substantially prejudiced defendants' ability to maintain a defense and, as a result, the 'presentation of the merits' was not 'subserved.'" We disagree.

Defendants are correct that the theories of boundary by agreement and adverse possession have different elements and are proved, in part, by different facts. Most notably, adverse possession requires hostile possession by the adverse claimant; boundary by agreement, in contrast, requires that the claimant's initial uncertainty as to the location of a boundary be resolved by an agreement with the adjacent landowner. *See Whitley v. Jacobs*, 278 Or 541, 547, 564 P2d 1057 (1977) (adverse possession); *Gibbons v. Lettow*, 180 Or App 37, 43-44, 42 P2d 925 (2002) (boundary by agreement). However, that distinction between the two theories is not enough to establish substantial prejudice to defendants because, as explained below, plaintiff's evidence was directly relevant to a claim for adverse possession.

In Oregon, adverse possession is governed by both common-law and statutory principles. To succeed on a claim of common-law adverse possession, a claimant must prove by clear and convincing evidence that he or she or a predecessor in interest made use of the property that was actual, open, notorious, exclusive, continuous, and hostile for a 10-year period. *Lieberfreund v. Gregory*, 206 Or App 484, 490, 136 P3d 1207 (2006).[2] Under the common law, a claimant may establish the hostility element by presenting clear and convincing evidence that he or she occupied the area of asserted adverse use by "pure mistake." *Norgard v. Busher*, 220 Or 297, 301, 349 P2d 490 (1960).

There are three essential elements to a claim for boundary by agreement:

> " 'First, there must be an initial uncertainty or dispute as to the 'true' location of the boundary. The stated purpose of this requirement is to prevent the agreement from falling within the Statute of Frauds or violating other real property conveyancing requirements, for it establishes that the parties are resolving a dispute by mutually fixing an unknown boundary rather than by making a conveyance of land. The element of resolution of uncertainty may also provide the consideration for the agreement. * * *

> " 'Second, the uncertainty must be resolved by an agreement, express or implied, to recognize a particular line as the boundary. The boundary recognized must be mutually intended as permanent, not as a tentative or temporary boundary or as a mere barrier. The parties must intend to resolve the uncertainty; an attempt to locate the "true" line cannot change the boundary described in the deed.

> " 'Finally, the parties must evidence their agreement by subsequent activities. If the agreement is memorialized in writing, it may be recorded in the chain of title to establish the recognized dividing line. If there is an express oral agreement, courts have required occupation to the boundary line in question.' "

---

[2] In his trial memorandum, plaintiff only advanced a claim for common-law adverse possession based on his possession and use of the disputed parcel before 1990.

*Gibbons*, 180 Or App at 43-44 (quoting *Ross v. DeLorenzo*, 65 Or App 586, 590, 672 P2d 1338 (1983), *rev den*, 296 Or 411 (1984)) (citations omitted).

Plaintiff testified that, after he had purchased his property in 1973, he continuously used the property up to the fence line as a horse pasture, and no one else used the property during that time. That testimony, which was not contradicted by defendants, was sufficient to establish that plaintiff had made use of the property that was actual, open, notorious, exclusive, and continuous for a 10-year period. *Lieberfreund*, 206 Or App at 490; *see also Allison v. Shepherd*, 285 Or 447, 452, 591 P2d 735 (1979) (actual use is satisfied if the claimant establishes "use of the land that would be made by an owner of the same type of land, taking into account the uses for which the land is suited"). Defendants did object, on relevance grounds, to plaintiff's testimony regarding how he had used the property, but the trial court declined to rule on that objection, explaining that plaintiff already had shown that he had used the property as a horse pasture.

Plaintiff's testimony also was relevant to establish the element of hostile possession. Plaintiff testified that, when he purchased his parcel in 1973, he believed that he was purchasing "everything that was enclosed within the fence" and that the fence marked the southern boundary of his parcel. Plaintiff also testified that, before he commenced this action, no one had raised any doubt that the fence was the boundary line, and he had never seen any survey maps of his property before defendants purchased the adjoining parcel. Plaintiff did testify that "ten years ago or so," in roughly the mid-1990s, an adjacent owner, Picore, had told him that the fence might "go too far to the south." Plaintiff "wasn't all that impressed and didn't have any reason, at that time, to do anything about it," because Picore was not a surveyor and because, during his career, plaintiff "had dealt with a lot of surveyors and I've had surveyors quarrel with one another." Defendants did not object to that testimony. Although it is possible that defendants did not object because they believed that testimony to be to their advantage, that is, evidence of hostile possession would undercut any assertion of the agreement necessary to prove boundary by agreement, the fact

remains that plaintiff's testimony was before the court when plaintiff moved to amend his pleading.

Plaintiff's testimony regarding his belief that the fence line was the boundary when he purchased his property in 1973 also was relevant to show hostility under the common-law "pure mistake" doctrine. "[P]ossession under a mistaken belief of ownership satisfies the element of hostility or adverseness in the application of the doctrine of adverse possession." *Norgard,* 220 Or at 303. In *Norgard,* the Supreme Court explained that the doctrine of pure mistake applies when a deed correctly identifies the boundaries of the land, but the person taking property under that deed actually occupies different property that he or she mistakenly believes is included in the deeded boundaries. Here, defendants did not contradict, or object to, plaintiff's testimony that he believed that the fence was the boundary and that he had intended to possess all the land up to the fence. Defendants also did not contradict, or .object to, plaintiff's testimony that none of defendants' predecessors in interest had ever disputed the location of the boundary and that plaintiff had never had any reason to doubt that the fence was the boundary.[3]

In short, plaintiff adduced evidence tending to establish each of the elements of common-law adverse possession. Thus, allowing plaintiff to amend his complaint furthered "the presentation of merits of the action." ORCP 23 B. Whether the court improperly exercised its discretion, then, turns on whether allowing the amendment substantially prejudiced defendants. Defendants argue that they were prejudiced because the elements of boundary by agreement and adverse possession are so different that, when preparing to defend what they believed would be a boundary by agreement case, defendants did not perceive the need to locate their predecessors in interest to the property or gather evidence regarding whether plaintiff had ever been granted permission to use the property. It follows, defendants reason, that the trial court erred in granting plaintiff's motion to

---

[3] As the trial court correctly noted, plaintiff's testimony regarding what Picore had told him about the location of the fence in the mid-1990s does not alter this conclusion because, under the common law, plaintiff had perfected his claim for adverse possession in 1983 based on his possession of the disputed parcel from 1973 to that date.

amend because the amendment left defendants facing a claim that they were unprepared to meet. As explained below, we disagree.

After defendants moved to dismiss plaintiff's complaint under ORCP 54 B(2), plaintiff argued:

"On response to his original motion, I would also move that the pleadings be amended to conform to the evidence. We've heard evidence today the facts of the case do not change whether it's one theory or the other. We did not plead specifically under boundary by agreement. We filed a motion for summary judgment based on three equitable principles found in the case law.

"The cases are multitudinous and they both deal with adverse possession and with expressed easement implication, acquiescence, and then there's also equitable estoppel. And lots of times the cases have combined those or taken part or some and all of the other. I have a trial memorandum that deals more with adverse possession than what was dealt with in the partial motion for summary judgment. And I will submit that to the court, if it's willing to read it, at this time."

Defendants objected, arguing:

"This is the first time we've heard anything on adverse possession. It's not been pled. He could have amended his complaint. It's been over a month since the court made its ruling [on summary judgment]. This case has been pending for years and now, when he realizes he has a hole in his case, he comes in and tries to plead a different legal theory.

"We're entitled to notice of legal theories before we get in the courtroom. We're entitled to notice before they conclude their case. And it hasn't been pled and it hasn't been proven, and we would be at great prejudice now, at this 12th hour, for him to change legal theories, because even counsel realizes, apparently, that he can't prove his case."

Plaintiff responded that he had never limited his pleadings to a claim for boundary by agreement and argued that "we don't plead theories as much as we plead facts and ask for ultimate remedies. And the remedy is the same; the facts are the same. I think that [plaintiff] has such a strong case that there're [*sic*] multiple justifications for it."[4] In that

---

[4] Even though plaintiff sought to amend his complaint to assert a claim for adverse possession, there is some authority, albeit predating the adoption of the

regard, it bears noting that, in his motion for partial summary judgment, plaintiff did not solely rely on a theory of boundary by agreement; in fact, plaintiff advanced three separate theories—including one that, while not well-focused and not referring by name to the doctrine of adverse possession, exclusively relied on an appellate decision based on adverse possession. In sum, although defendants are correct that plaintiff did not refer specifically to the doctrine of adverse possession in his original complaint or summary judgment submissions, plaintiff likewise is correct that he did not solely rely on a theory of boundary by agreement in his pretrial submissions. Thus, defendants had reason to suspect that other theories were in play. Nevertheless, defendants did not at any time file a motion to require plaintiff to make his complaint more definite and certain by clarifying his operative theories of relief. *See* ORCP 21 D.

As noted, the court took plaintiff's motion to amend, along with defendant's ORCP 54 B(2) motion, under advisement and asked defendants to present their case. Defendants asked for, and received, a 10-minute recess. Defendants did not ask for a longer continuance for the purpose of locating witnesses or otherwise preparing a defense to plaintiff's claim for adverse possession. Had defendants alerted the trial court to the concerns that they now raise on appeal, the court could have granted a longer continuance to allow them time to prepare, as expressly contemplated by the final sentence of ORCP 23 B.[5]

Oregon Rules of Civil Procedure, to support his premise that it is permissible, under a general claim asserting title to land, to prove a claim for adverse possession. *See Mekulich v. Liddycoat*, 268 Or 160, 164-65, 519 P2d 378 (1974) ("The more important point to observe is that in almost all litigation involving the title to land the controversy which precedes the filing of the lawsuit ordinarily discloses the nature of the plaintiff's claim. Thus, there is little chance that the defendant would be caught by surprise merely because the complaint failed to specify the source of the plaintiff's title. We adhere to our former cases holding that it is not necessary to plead adverse possession as the source of the plaintiff's title."). *But see Central Oregon Fabricators, Inc. v. Hudspeth*, 159 Or App 391, 403, 977 P2d 416, *rev den*, 329 Or 10 (1999) (holding that, where the plaintiff had not pleaded an adverse possession claim in a quiet title action, the trial court erred in awarding relief under that theory). Because the trial court permitted plaintiff to amend his complaint under ORCP 23 B, we need not address the apparent tension in those cases.

[5] Defendants' discussion of "prejudice" in their written closing argument added little to their argument before the trial court. In that argument, defendants contended:

Instead, defendants proceeded with their case and presented evidence that they now contend rebutted plaintiff's claim for adverse possession, namely, evidence that the fence line had not been fixed in one location for the requisite 10-year period. Defendants' argument on appeal that they could have put on a *better* case if they had been given the opportunity to locate witnesses and gather evidence does not persuade us that defendants were unfairly prejudiced, particularly in light of all the foregoing circumstances, including their failure to avail themselves of the remedy that the legislature provided in ORCP 23 B. Accordingly, we conclude that the trial court did not err in allowing plaintiff's motion to amend his pleading to state a claim for adverse possession.

We turn to the merits of that claim.[6] Plaintiff's claim for adverse possession is equitable in nature, and because the notice of appeal in this case was filed after the effective date of recent amendments to ORS 19.415(3), we have discretion

---

"The plaintiff waited and made his request to amend his pleading during trial apparently in an attempt to meet objections to plaintiff's evidence which did not conform to his pleadings. After the court's ruling on plaintiff's motion for summary judgment, the plaintiff knew or should have known of the need to submit new evidence and or new pleadings. The untimely attempt to amend at the close of plaintiff's case raised a completely new set of legal issues and if allowed, imposed a tremendous additional burden of proof on the defendants. This burden they had no advance notice of and no opportunity to prepare to meet.

"* * * * *

"The court should deny the motion because it causes extreme and undue prejudice to the defendants; the proposed amendment is also of questionable merit because the plaintiff, in the presentation of his case, has failed to establish even a *prima facie* case for adverse possession; and allowance of amendment would result in undue delay and additional expense in the case because the only possible way to mitigate the prejudice is to allow defendants additional time to prepare to meet the new issues and present appropriate evidence and witnesses."

Nowhere in their written closing argument did defendants request a continuance to allow them to more fully prepare to contest plaintiff's claim for adverse possession.

[6] Our conclusion that the trial court did not err in allowing plaintiff to amend his complaint renders consideration of defendants' second assignment of error unnecessary. In that assignment of error, defendants argue that the trial court erred in denying their ORCP 54 B(2) motion to dismiss plaintiff's complaint. Defendants' motion was directed to plaintiff's original, unamended complaint, which, defendants argued, stated only a claim for boundary by agreement. In short, the trial court did not grant any relief to plaintiff based on a theory of boundary by agreement. Thus, defendants' second assignment of error is moot.

to review this case *de novo*. Or Laws 2009, ch 231, § 3. We decline to do so. ORAP 5.40(8)(c). Accordingly, we review the trial court's legal conclusions for errors of law, and we are bound by the trial court's findings of fact if any evidence supports them. *Case v. Burton*, 250 Or App 14, 17, 279 P3d 259 (2012) (applying "any evidence" standard to adverse possession claim where notice of appeal was filed after the effective date of the 2009 amendments to ORS 19.415(3)).

We have set out the trial court's findings of fact above, and there is evidence in the record to support those findings. As we have explained, plaintiff's evidence was sufficient to establish the elements of common-law adverse possession. In their final assignment of error, defendants remonstrate that the trial court erred because evidence in the record showed that the fence line had moved 2.7 feet southward between 1978 and 2002 and that, because "no testimony from any witness demonstrated the dates of the movement * * * [t]he land between that fence line and the existing fence (a band roughly 2.7 feet in width), may or may not have been adverse possessed (it would depend on what year the 2.7 feet worth of movement occurred)."

As we recently explained in *Case*, " '[a]ll the elements necessary to establish adverse possession must be proved by clear and convincing evidence' [and] '[t]his requirement [also] applies to identification of the property adversely used.' *Winthers v. Bertrand*, 239 Or 97, 99, 396 P2d 570." 250 Or App at 23 (citation omitted; fourth brackets in *Case*). In *Case*, the plaintiff had claimed a portion of the defendants' property by adverse possession, relying on the location of a fence and a farm road. *Id.* at 18. The trial court found that plaintiff had failed to establish the location of the fence line and the farm road, and that the evidence showed instead "that the line almost certainly moved." *Id.* at 20. Accordingly, we concluded that the "plaintiff [had] failed to sufficiently identify the area of asserted adverse use" and that that failure was fatal to his common-law and statutory adverse possession claims. *Id.* at 24.

Here, by contrast, plaintiff's evidence established the existence of the fence line and its essentially unchanged location after 1973. Plaintiff testified that, at the time of trial,

the fence line was in the same location as it was when he purchased the property in 1973. He also testified that, when fence posts were replaced, they were put back in "exactly" the same place. On cross-examination, plaintiff testified that, in replacing the posts, the fencing contractor "pulled the old thing out, they put the new stuff in right where it was." In addition, plaintiff testified that, over the years, the fence line did not move further onto defendants' property. It is true, as defendants observe, that their expert witness testified that there was a 2.7-foot difference in the fence's location between the survey that he performed in 2002 and an earlier survey performed by another surveyor in 1978. However, the witness conceded that that minor discrepancy could be explained by differences in the survey methods that the two surveyors used. Although the trial court did take note of the "minor shifts in the fence location," the court ultimately found that plaintiff had "replaced the rotted and original posts with cemented posts in approximately the same location as the original posts." In addition, the court found that plaintiff's testimony was credible. In the absence of an express factual finding, we will "presume that the facts were decided in a manner consistent with the [trial court's] ultimate conclusion," so long as there is evidence in the record to support such a finding. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). There is evidence in the record to support the court's implied finding that any minor movement in the fence line after 1973 did not move the fence line further onto defendants' property. Accordingly, we reject defendants' final assignment of error.

In sum, the trial court found that plaintiff had established each of the elements of common-law adverse possession, there is evidence in the record to support those findings, and we are bound by them. Accordingly, the trial court did not err in entering judgment for plaintiff on that claim.

Affirmed.